Richard E. BROWN, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 79–2529.

United States Court of Appeals, Ninth Circuit.

May 21, 1980.

David F. Stobaugh, Bendich, Stobaugh & Strong, Seattle, Wash., for plaintiff-appellant.

Cedric C. Chao, Asst. U. S. Atty., San Francisco, Cal., for defendant-appellee.

* Subsequent to oral argument and submission of this case for decision, Judge Carter died.

Before CARTER,* KILKENNY and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

In 1973, Brown was indicted by a federal grand jury for violations of the Gun Control Act (Act), 18 U.S.C. § 921 *et seq.*. The indictment charged that Brown purchased a semi-automatic rifle by making false written statements on the document required for purchase of the weapon, and by submitting false identification to the federally licensed gun dealer. Specifically, Brown was charged with falsely stating on the document that his name was Robert Young (Count I), falsely stating on the same document that he had never been convicted of a felony (Count II), and producing a false California driver's license to prove identity (Count III). A jury found Brown guilty on all three counts and the trial judge sentenced him to the maximum five-year prison term on each. The sentences on Counts I and II were to run consecutively, while the sentence on Count III was to run concurrently with those on Counts I and II. Following his imprisonment, Brown brought a motion to vacate the sentence, pursuant to 28 U.S.C. § 2255, claiming that the consecutive sentences for Counts I and II violated Supreme Court and Ninth Circuit law. It is from the denial of that motion that Brown appeals. The first of three issues presented to us is the claim that the consecutive sentences were improper.

The second issue in this appeal arises from additional facts. Following Brown's conviction and sentencing in November 1973, his trial counsel filed a notice of appeal and then withdrew from the case. Although a second attorney was selected by Brown to pursue the appeal, no legal action was taken and the appeal was dismissed in January 1975 for want of prosecution. At the time Brown filed his 2255 motion in the

district court, he also filed a motion in this court to reinstate the appeal dismissed in 1975. Brown claimed that he had been unaware of his attorney's failure to pursue the appeal, and, therefore, that he had been wrongfully denied his right to appeal his conviction. In response, the government claimed that Brown voluntarily abandoned the appeal. Faced with this significant factual dispute, we denied the motion to reinstate the appeal and directed the district court then considering the 2255 motion to explore also the facts surrounding the dismissed appeal. Rather than holding a hearing to learn the true cause of Brown's loss of appeal, however, the district judge simply denied the motion to reinstate at the same time that he denied the 2255 motion. Brown's claim that the district court wrongfully refused to hold the ordered factual hearing presents the second of the three issues before us.

Brown raises the third issue by claiming that the district court erred in refusing to appoint counsel for his 2255 motion. Although Brown was represented in that motion by an attorney who took the case on a pro bono basis, Brown sought retroactive appointment of the attorney so that he would be compensated for his efforts. We will consider each of these three issues separately.

## I.

Counts I and II, for which Brown received the consecutive sentences, each charged a violation of 18 U.S.C. § 922(a)(6), which prohibits the conscious making of a false written statement in connection with the purchase of a firearm from a federally licensed gun dealer. The penalty provision under which Brown was sentenced provides:

> Whoever violates any provision of this chapter . . . shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

18 U.S.C. § 924(a). The trial judge explained his reasons for imposing the consecutive sentences as follows:

Considering all factors, it is obvious that the maximum sentence should be imposed.

The question then becomes: What is the maximum under the circumstances of this case? It is obviously five years and $5,000 on each count, but some of the counts appear to be a recitation of the same general activity, and it would be inappropriate, unless Congress intended to the contrary, to punish more than once for some single unlawful act.

It is necessary then to look at the aegis of the law, and it does appear that Congress had in mind protecting the people in two respects by this statute. One was to require the proper identification of an applicant seeking to purchase a gun, and the other was to assure that guns cannot be sold to those who have prior criminal records, as described in the statute.

The defendant here engaged in two separate acts that frustrated both of those purposes of the statute. He supplied a false name and false identity in having the application for the gun purchase prepared, and, secondly, he deliberately concealed the fact he had a substantial prior criminal record.

Having by two separate actions frustrated two purposes of the statute, it seems to me appropriate there should be separate punishment imposed for both; and, accordingly, the defendant will be committed to the custody of the Attorney General for a period of five years and fined $5,000, the sentence on Count 2 to run consecutively to the sentence imposed upon Count 1.

The helpful reasoning by the district judge justifying imposition of consecutive five-year terms, which is now relied on by the government, is logical and persuasive. It is reasonable to conclude that Brown's false assertions about his identity and whether he was a felon were each independently violative of a significant purpose of the Act and, therefore, that each assertion should be characterizable as a separate unit of prosecution. We are compelled, how-

ever, by Supreme Court and Ninth Circuit precedent, to examine the statute and its history more carefully.

■ A court may not impose consecutive sentences for a single transaction that violates more than one statutory provision or purpose unless Congress has clearly expressed its intent to make each violation within that single transaction a separate offense subject to separate punishment. This rule, known as the "rule of lenity," has been forcefully stated by the Supreme Court:

> When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition or our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.

*Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). *See also Heflin v. United States*, 358 U.S. 415, 419–20, 79 S.Ct. 451, 453–454, 3 L.Ed.2d 407 (1959); *Ladner v. United States*, 358 U.S. 169, 173–77, 79 S.Ct. 209, 211–213, 3 L.Ed.2d 199 (1958); *Prince v. United States*, 352 U.S. 322, 329, 77 S.Ct. 403, 407, 1 L.Ed.2d 370 (1957); *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221–22, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952). We have also followed the rule of lenity:

> The issue in this case is one of statutory interpretation. The question is wheth-

er Congress intended to exercise its power to authorize cumulative sentences for [the defendant's] single transaction . . . . Unless we can find from the face of the Act or from its legislative history a clear indication that Congress intended to authorize multiple punishments for a single transaction, we are obliged to construe the Act against the harsher penalties that result from cumulative punishments.

*United States v. Clements*, 471 F.2d 1253, 1254 (9th Cir. 1972); *see also United States v. Edick*, 603 F.2d 772, 773–74 (9th Cir. 1979); *United States v. UCO Oil Co.*, 546 F.2d 833, 836–38 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). Accordingly, we must look to the wording of the provision violated by Brown, the overall statutory scheme,[1] and the legislative history to determine congressional intent as to cumulative punishments in this case. *Id.*

■ 18 U.S.C. § 922(a)(6) provides:

> It shall be unlawful—for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

Counts I and II each charged that Brown "did knowingly state falsely in writing" that his name was Robert Young and that he had never been convicted of a felony. Thus, the counts were not only limited to violation of one statutory provision, section

---

1. Examination of the statutory scheme, initially suggested in *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955), was not undertaken by us in *United States v. Clements*, 471 F.2d 1253 (9th Cir. 1972), and was considered by us in *United States v. Edick*, 603 F.2d 772 (9th Cir. 1979), only in conjunction with an examination of legislative history. As

*United States v. Tarrant*, 460 F.2d 701, 704 (5th Cir. 1972), illustrates, however, the statutory scheme may itself reveal a clear intent to impose cumulative punishment. We believe, therefore, that the scheme of the statute merits examination separate from its language and history. *See United States v. Kinsley*, 518 F.2d 665, 669–70 (8th Cir. 1975).

922(a)(6), they were limited to that portion of section 922(a)(6) which makes it unlawful for any person "knowingly to make any false or fictitious oral or written statement . . . with respect to any fact material to the lawfulness of the sale . . . ."[2] Section 922(a)(6) contains no language to suggest that Congress intended cumulative punishment for a single document that contained two false statements. Other courts, faced with interpretation of similar statutes which, like section 922(a)(6), preface the object of the offense with the word "any," have concluded that no clear intent to impose cumulative punishment has been expressed by Congress. *E. g., Ladner v. United States, supra,* 358 U.S. at 170 n.1, 178, 79 S.Ct. at 210, 214; *Bell v. United States, supra,* 349 U.S. at 82–84, 75 S.Ct. at 621–22; *United States v. Deaton,* 468 F.2d 541, 545–46 (5th Cir. 1972), *cert. denied,* 410 U.S. 934, 93 S.Ct. 1386, 35 L.Ed.2d 597 (1973); *United States v. Martin,* 302 F.Supp. 498, 499 n.1, 501–502 (W.D.Pa.1969), *aff'd,* 428 F.2d 1140 (3rd Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 361, 27 L.Ed.2d 269 (1970). "Seemingly this is because 'any' may be said to fully encompass (*i. e.,* not necessarily exclude any part of) plural activity, and thus fails to unambiguously define the unit of prosecution in singular terms." *United States v. Kinsley,* 518 F.2d 665, 667 (8th Cir. 1975). Thus, we cannot conclude from the face of section 922(a)(6) that Congress clearly intended to impose consecutive sentences for creation of a single document containing two false statements.

The government fares somewhat better when we analyze the overall statutory scheme. The Act appears designed to accomplish at least two purposes: to keep guns out of the hands of youths, known criminals, and incompetents (18 U.S.C. § 922(b)(1), (d), (g), (h)), and to create a record of gun purchasers to aid law enforcement officials (18 U.S.C. § 923(g)). This

analysis closely parallels the reasoning of the district judge when he imposed consecutive sentences. But the mere existence of these two purposes does not permit us to affirm. We are not allowed to look for an intent that reasonably could be imputed to Congress, nor are we permitted to construe the Act in a way that we believe will best accomplish evident statutory purposes. Rather, when it comes to the imposition of harsh criminal penalties, we must look for "a clear indication that Congress intended to authorize multiple punishments for a single transaction . . . ." *United States v. Clements, supra,* 471 F.2d at 1254. For "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States, supra,* 349 U.S. at 83, 75 S.Ct. at 622. It is thus insufficient that we can identify two separate reasons for the statute. Inasmuch as there is nothing within the statutory scheme of the Act to suggest that Congress intended that these two purposes give rise to consecutive sentences, we must conclude that, in examining the overall statutory scheme, congressional intent is ambiguous.

Finally, we look to the legislative history of the Act. After examining that history, the Supreme Court concluded that "[w]hen Congress enacted [section 922(a)(6)], it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." *Huddleston v. United States,* 415 U.S. 814, 824, 94 S.Ct. 1262, 1268, 39 L.Ed.2d 782 (1974). The Senate Report on the Act stated:

The principal purposes of [the Gun Control Act] are to aid in making it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or

**2.** The government, in its brief, mischaracterizes the indictments as charging that Brown violated the written statement provision of 18 U.S.C. § 922(a)(6) by saying that he was not an ex-felon and further violated the separate misrepresentation of identification provision by supplying a false name and false identification. As is

clear from the face of the indictments, however, both the false name and the denial of previous felonies were charged as knowing false statements made in writing. The submission of the false identification formed the basis for Count III.

incompetency, and to assist law enforcement authorities in the States and their subdivisions in combating the increasing prevalence of crime in the United States.

The ready availability; that is, ease with which any person can anonymously acquire firearms (including criminals, juveniles without the knowledge or consent of their parents or guardians, narcotic addicts, mental defectives, armed groups who would supplant duly constituted public authorities, and others whose possession of firearms is similarly contrary to the public interest) is a matter of serious national concern.

S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in*, [1968] U.S.Code Cong. & Admin. News, pp. 2112, 2113–14. Reviewing these statements and the balance of the legislative history, we learn no more than we did from an examination of the statutory scheme: there are two discernible purposes of the Act, one more central than the other, but neither directly tied to section 922(a)(6) or the penalty provisions. Concerning section 922(a)(6) the Senate Report, which is substantially identical to a later conference committee report, states:

This paragraph prohibits the making of false statements or the use of any deceitful practice (both knowingly) by a person in connection with the acquisition or attempted acquisition of a firearm from a licensee. To invoke the prohibition, the false statement or deceitful practice must be material to the lawfulness of the sale of the firearm under the provisions of the title. The requirement that one who obtains a firearm from a licensee must properly identify himself is inherent in this prohibition. This is strengthened by the recordkeeping provisions . . . contained in the title.

S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in*, [1968] U.S.Code Cong. & Admin. News, pp. 2112, 2203. The Senate Report statement concerning the sentencing provision explains that it:

Provides penalties for violation, including false statements, of any provision of the title, or regulations issued thereunder—a fine of not more than $5,000 or imprisonment for not more than five years or both.

S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in*, [1968] U.S.Code Cong. & Admin. News, pp. 2112, 2207. From these statements of legislative intent, we are unable to conclude that Congress clearly intended to impose cumulative punishments for a single document that twice violates section 922(a)(6). The history, like the Act itself, is silent as to consecutive sentences.

Having reviewed the language of section 922(a)(6), the statutory scheme of the Act, and its legislative history, we cannot say that Congress clearly expressed an intent to impose cumulative punishments upon Brown. Therefore, we are compelled by the rule of lenity to hold that imposition of consecutive sentences for Counts I and II was error. "[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies 'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.'" *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971).

## II.

■ Brown contends that his right to appeal his conviction was lost through ineffective assistance of counsel and that the appeal should, therefore, be reinstated. Before he went to prison in early 1974, Brown claims that his attorney emphatically stated his commitment to pursue Brown's appeal. He further claims that throughout 1974 he assumed that his appeal was being processed, that he was totally unaware of his attorney's failure to act, and that he received no notice from this court that his appeal had been dismissed for want of prosecution. In sharp contrast to Brown's version of the facts, the government contends that Brown expressly dismissed his attorney from the case saying that he wanted to hire a lawyer who lived closer to the federal

penitentiary where Brown would be incarcerated. The government also claims that Brown was notified about his attorney's failure to act several months before the appeal was dismissed for want of prosecution.

When previously facing factual disputes of this nature, we have held that "[i]t is for the district court to determine what the actual facts were and, in the first instance, to determine if there was a violation of [defendant's right to effective assistance of counsel]." *Sanders v. Craven*, 488 F.2d 478, 480 (9th Cir. 1973). In this case we did likewise: we denied Brown's motion to reinstate the appeal stating:

> We are of the view that the facts relating to this issue (i. e., the cause of the frustration of Brown's direct criminal appeal) should be explored. These facts can be developed in the [district court] proceedings under 28 U.S.C. § 2255.

Rather than making a factual determination as to whether Brown or his attorney had abandoned the appeal, however, the district court simply denied the motion to reinstate. That action was based upon the district judge's belief that the sole issue Brown would raise on appeal was the consecutive sentence question, and that Brown would receive a quicker review of that question by directly appealing the district court's denial of the 2255 motion to vacate his sentence. Therefore, the district court reasoned, there was no need to make the factual determination and clutter the case with two appeals—one from denial of the 2255 motion, the other by reinstatement of the appeal. As logical as these reasons for avoiding the factual issue may have been, the district judge's refusal to make the ordered factual determination was based upon an assumption he was not entitled to make.

In *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), the Supreme Court struck down a procedure of this circuit under which petitioners seeking to reinstate an appeal were required to state what issues would be raised on appeal and to show that the previous denial of the appeal had been prejudicial to them. The Court relied upon the fact that "appeal from a District Court's judgment of conviction in a criminal case . . . is, in effect, a matter of right," *Coppedge v. United States*, 369 U.S. 438, 441, 82 S.Ct. 917, 919, 8 L.Ed.2d 21 (1962), and ruled that it was error for this circuit "to require an applicant under 28 U.S.C. § 2255 to show more than a simple deprivation of this right before relief can be accorded." *Rodriquez v. United States, supra*, 395 U.S. at 330, 89 S.Ct. at 1717. Following *Rodriquez*, we have held that the question before a district court in ruling upon an alleged loss of appeal through ineffective assistance of counsel is not what issues would be raised by that appeal, or whether it has merit, but only whether the appeal was wrongfully denied. *Sanders v. Craven, supra*, 488 F.2d at 480.

In deciding that Brown's motion to reinstate his appeal should be denied without the ordered factual determination, the district judge asked Brown's counsel what issues would be raised in the reinstated appeal. When the attorney replied that he could not identify those issues because he had not yet reviewed the trial record, the judge apparently decided that reinstatement of the appeal would be frivolous because Brown's only real issue, error in consecutive sentences, could be reviewed more quickly by appealing the denial of Brown's 2255 motion. In so doing, the trial judge did precisely what *Rodriquez* and *Sanders* forbade: he inquired into what issues would be raised on appeal and, finding none of merit other than the consecutive sentence issue, he denied the motion. That action must be reversed and remanded for the district court to determine whether Brown lost his right to appeal through ineffective assistance of counsel. If he did, the district court, pursuant to section 2255, must vacate and resentence Brown so that he may perfect an appeal in the manner prescribed by the applicable rules. *Rodriquez v. United States, supra*, 395 U.S. at 332, 89 S.Ct. at 1718.

### III.

In pursuing his 2255 motion, Brown was represented by counsel who had taken the case on a pro bono basis. After the attorney had completed most of the work for presenting the motion, Brown sought to have him appointed counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, with retroactive compensation to the commencement of the 2255 proceeding. The district court declined to make the appointment.

We have held that counsel must be appointed to represent indigent defendants in 2255 proceedings when the complexities of the case are such that denial of counsel would amount to a denial of due process. *Dillon v. United States*, 307 F.2d 445, 446–47 (9th Cir. 1962). "In the absence of such circumstances, a request for counsel in proceedings under section 2255 is addressed to the sound discretion of the trial court." *Id.* at 447.

In the case before us, refusal to appoint counsel could not give rise to due process problems because Brown was adequately represented by pro bono counsel. The matter was one of compensation only, and is properly left to the sound discretion of the district court. " '[W]hen judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' " *Id.* at 448 (quoting *United States ex rel. Wissenfield v. Wilkins*, 281 F.2d 707, 715 (2d Cir. 1960)). Brown failed to demonstrate that such error occurred here.

### IV.

Because the record makes it clear that Brown has already served his sentence under Count I, we see no need to remand for resentencing on that count. The imposition of the consecutive sentence on Count II of the indictment is vacated.[3] In addition, the denial of the motion to reinstate is reversed and remanded to the district court with directions to make the appropriate factual determination concerning ineffective assistance of counsel, and the denial of appointment of counsel is affirmed.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

**3.** The recent Supreme Court decision in *Whalen v. United States*, —— U.S. ——, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), does not detract in any way from the validity of our decision and direction on remand. Although *Whalen* involved only one "transaction," there were two separate crimes under two separate statutes. Here, we are faced with only one crime under one subdivision of a statute. Moreover, the majority's holding in *Whalen* that the consecutive sentences were illegal rested primarily on a conclusion that the Double Jeopardy Clause of the Fifth Amendment embodies a separation of powers principle. In any event, the Court in *Whalen* remanded without further directions. We may assume that the Court intends the lower court to resentence. Otherwise, it would have ordered the case dismissed on double jeopardy grounds.