**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eduardo VARGAS–CASTILLO, Defendant–Appellant.**

No. 02–50161.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2003.

Filed May 15, 2003.

it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

Ross E. Viselman, San Diego, California, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney (when brief was filed), Carol C. Lam, United States Attorney (when opinion was filed), Dorn G. Bishop, Assistant United

States Attorney, San Diego, California, for the plaintiff-appellee.

Before B. FLETCHER and HAWKINS, Circuit Judges, and BURY, District Judge.*

## OPINION

BURY, District Judge.

Appellant Eduardo Vargas–Castillo ("Vargas") appeals his jury convictions for Importation of Cocaine and Marijuana, in violation of 21 U.S.C. §§ 952 and 960, and Possession of Cocaine and Marijuana with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1). Vargas argues that the indictment was multiplicitous, the search of his car was illegal, and the laws under which he was convicted are unconstitutional. For the reasons set forth below, we affirm.

## BACKGROUND

### I. Factual History

On the afternoon of February 7, 2001, Vargas drove from Mexico into the United States through the San Ysidro Port of Entry. At the primary inspection point, Vargas denied to a customs inspector that he was bringing anything from Mexico into the United States. The customs inspector noticed a Treasury Enforcement Computer System ("TECS") alert on his computer terminal, indicating that Vargas's car should be referred to secondary inspection. In response to the alert, the customs inspector asked Vargas for the car keys in

order to inspect the trunk of the vehicle. The customs inspector noticed Vargas's hand shook as he handed over the keys, but found nothing unusual in Vargas's trunk and referred him to the secondary inspection point.

At the secondary inspection point, a narcotics-detecting dog screened Vargas's vehicle. As a result of that screen, a customs agent drove Vargas's vehicle to the x-ray station while Vargas was taken to the security office. The x-ray caused the customs agent to suspect the presence of narcotics in Vargas's vehicle. During the performance of her physical inspection of Vargas's vehicle, the customs agent noticed that the spare tire in Vargas's trunk was heavier than normal. The customs agent cut open the tire and saw two or three cellophane-wrapped packages. A field test performed on one of the packages revealed that it contained marijuana.

After notifying her superiors that she had discovered narcotics, the customs agent cut the spare tire completely open and found a total of six cellophane-wrapped packages. Five of the packages contained 8.68 kilograms (approximately 19 pounds) of marijuana and one, wrapped in red duct tape, contained .88 kilograms (approximately 2 pounds) of cocaine. Vargas was subsequently placed under arrest. Further inspection of the vehicle revealed registration documents reflecting Vargas as the owner.

A border patrol agent read Vargas his Miranda rights in Spanish, which Vargas acknowledged that he understood and elected to waive. Vargas was then interviewed by a customs special agent, with the border patrol agent acting as translator. At trial, the border patrol agent testi-

---

* The Honorable David C. Bury, District Judge for the District of Arizona, sitting by designa- tion.

fied that during the interview Vargas admitted knowing there were narcotics in his vehicle, although he did not know how much or what type. On the other hand, Vargas testified at trial that he knew about the marijuana, but not the cocaine.

According to Vargas, the previous day an individual named "Andres" offered to pay him to smuggle narcotics from Mexico into the United States. Vargas believed he would only be smuggling marijuana as cocaine was never mentioned during his conversation with Andres. Vargas was to drive the narcotics across the border, leave his vehicle at a shopping center, walk back into Mexico, and then call Andres on a cell phone, at which time Vargas would be paid.

At trial, a customs special agent provided expert testimony regarding the value of marijuana and cocaine, what constitutes a distributable amount of each, and the methods and practices of drug smuggling operations. The agent testified that .88 kilograms of cocaine and 8.68 kilograms of marijuana are distributable amounts, rather than amounts intended for personal use. The agent testified that the cocaine and marijuana had a retail value in the United States of approximately $70,000.00 and $15,000.00, respectively. Finally, the agent testified that it is not typical to find the driver's fingerprints on smuggled drug packages.

After less than an hour of deliberations, the jury returned a guilty verdict on all four counts of the Indictment. Vargas was sentenced to 27 months imprisonment with three years supervised release on all four counts, to run concurrently.

## II. Procedural History

Prior to trial, Vargas filed numerous motions, several of which form the basis of this appeal. One such motion was to dismiss the indictment on the grounds that 21 U.S.C. §§ 841, 952, and 960 are unconstitutional. On August 10, 2001, the district court heard oral argument and on August 15, 2001, denied Vargas's motion.

At the hearing, Vargas sought leave to file a motion to suppress evidence for violations of the Fourth Amendment. The apparent basis for Vargas's request was that the TECS warning was based upon an anonymous tip and Vargas needed "the opportunity to file a Fourth Amendment issue based on the reliability of that tip." Vargas believed his statements to the authorities would require suppression if it could be proven that the tip was unreliable, thereby eliminating any reasonable suspicion or probable cause. The district court denied Vargas's request for leave to file a motion to suppress.

Vargas also filed motions in limine to dismiss the indictment as multiplicitous and, alternatively, to sever the marijuana counts from the cocaine counts. The district court denied Vargas's motions on the basis that each count of the indictment involved different controlled substances and, therefore, different factual elements.

At the close of evidence, Vargas moved for a judgment of acquittal pursuant to Rule 29, Federal Rules of Criminal Procedure. The district court denied Vargas's motion because Vargas's knowledge that he smuggled marijuana was also sufficient for a jury to find him guilty of smuggling the cocaine. Accordingly, the district court, over Vargas's objections, instructed the jury that Vargas was not required to know the specific types of narcotics he smuggled, in accordance with Ninth Circuit Criminal Jury Instruction 9.27 (2000).

## ANALYSIS

### I. Multiplicity

■ The question of whether an indictment is multiplicitous—charges a single

offense in more than one count—is reviewed de novo. *United States v. McKittrick*, 142 F.3d 1170, 1176 (9th Cir.1998).

Vargas argues that Counts 1 and 2 were multiplicitous of Counts 3 and 4 of the indictment. Specifically, Vargas argues that charging him under 21 U.S.C. §§ 841(a)(1), 952, and 960 for both marijuana and cocaine resulted in Vargas being charged twice for the same offenses, namely importation and possession of "controlled substances" with intent to distribute.

■ The test to determine whether an indictment is multiplicitous is "whether each separately violated statutory provision requires proof of an additional fact which the other does not." *McKittrick*, 142 F.3d at 1176 (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)) (internal quotations omitted). In the present case, Vargas was indicted for possession of cocaine with intent to distribute and possession of marijuana with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1). Vargas was likewise indicted for importation of cocaine and importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960. The required elements for possession with intent to distribute are: (1) the defendant knowingly possessed the controlled substance; and (2) the defendant possessed the controlled substance with the intent to deliver it to another person. *United States v. Orduno–Aguilera*, 183 F.3d 1138, 1140 (9th Cir.1999). Similarly, the elements of importation are: (1) the defendant intentionally brought the controlled substance into the United States; and (2) the defendant knew that it was a controlled substance. *Id.*

The statutory definition of "marijuana" includes various parts of the plant, as well as derivatives thereof. 21 U.S.C. § 802(16). However, the definition excludes "mature stalks ..., fiber produced from such stalks, oil or cake made from the seeds of such plant," as well as other compounds, derivatives, or mixtures. *Id.* While cocaine is not specifically defined, it falls within the definition of a "narcotic drug." 21 U.S.C. § 802(17)(D).

The government had the burden of proving beyond a reasonable doubt that the substance found in five of the cellophane-wrapped packages was "marijuana." *See Orduno–Aguilera*, 183 F.3d at 1140. The definition of "marijuana" specifically states that only certain parts of the plant Cannabis sativa L. are included. Therefore, the government had to prove beyond a reasonable doubt that the substance in those five packages consisted of the parts of the plant specifically included and not specifically excluded from the definition of "marijuana." By the same token, the government had to prove that the substance in the red-taped cellophane-wrapped package was "cocaine," a "narcotic drug." While there may not be an express definition of "cocaine," it does not fall within the definition of Cannabis sativa L. *See* 21 U.S.C. §§ 802(16), (17)(D).

■ Based upon the foregoing, each separately violated statutory provision required proof of an additional fact that the other did not, thereby satisfying the *McKittrick* test. *McKittrick*, 142 F.3d at 1176. The count for importation of cocaine required proof that the substance imported by Vargas was, in fact, "cocaine" as defined in 21 U.S.C. § 802(17)(D). On the other hand, the count for importation of marijuana required proof that the substance imported by Vargas was, in fact, "marijuana" pursuant to 21 U.S.C. § 802(16). Thus, each separate violation of 21 U.S.C. §§ 952 and 960 by Vargas, importation of marijuana *and* cocaine, required proof of an additional fact which the other did not. The same is true for Var-

gas's violations of 21 U.S.C. § 841(a)(1), possession of marijuana *and* cocaine with intent to distribute.

For example, if the substance in the red-taped cellophane-wrapped package was proven to be a non-controlled substance, Vargas could only have been convicted of *attempted* importation of cocaine and *attempted* possession of cocaine with intent to distribute, both violations of 21 U.S.C. § 846. *See United States v. Steward,* 16 F.3d 317, 320 (9th Cir.1994) (finding that a defendant could be convicted for attempted sale of a controlled substance based upon his completed sale of a non-controlled substance which he believed to be controlled). Thus, the precise type of substance was a necessary element for each importation.

While this Court has yet to address whether charging multiple counts for different controlled substances is multiplicitous, a number of other circuits have done so. The First, Second, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits have all held that charging a defendant with separate counts for different controlled substances is not multiplicitous and does not violate double jeopardy. *See United States v. Richardson,* 86 F.3d 1537, 1552–53 (10th Cir.1996); *United States v. Bonilla Romero,* 836 F.2d 39, 46–47 (1st Cir. 1987); *United States v. DeJesus,* 806 F.2d 31, 36–37 (2d Cir.1986); *United States v. Grandison,* 783 F.2d 1152, 1156 (4th Cir. 1986); *United States v. Griffin,* 765 F.2d 677, 682–83 (7th Cir.1985); *United States v. Davis,* 656 F.2d 153, 159–60 (5th Cir. 1981); and *United States v. Pope,* 561 F.2d 663, 669 (6th Cir.1977).

■ Congress may authorize cumulative punishments for separate criminal offenses which occur in the same act. *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Double jeopardy is not implicated so long as each

violation requires proof of an element which the other does not. *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180. Clearly, each of the violations at issue here required proof of an independent fact; *"i.e.,* the identity of the drugs themselves." *Bonilla Romero,* 836 F.2d at 46.

Section 841(a)(1) criminalizes the possession of "a controlled substance," not possession of "a controlled substance or group of controlled substances." *Richardson,* 86 F.3d at 1553 (quoting *Bonilla Romero,* 836 F.2d at 47). The same is true for importation. 21 U.S.C. 960(a)(1). Marijuana is a schedule I controlled substance, while cocaine is a schedule II controlled substance. 21 U.S.C. § 812. The penalty provisions for sections 841 and 960 distinguish between the amount and type of controlled substances. 21 U.S.C. §§ 841(b) and 960(b); *see also Richardson,* 86 F.3d at 1553; *Grandison,* 783 F.2d at 1156. Since different penalties are provided for possession and importation of different quantities of drugs listed in different schedules, Congress, in enacting the Comprehensive Drug Abuse Prevention and Control Act ("CDAPCA"), clearly intended to "give maximum flexibility to judges, permitting them to tailor the period of imprisonment, as well as the fine, to the circumstances involved in the individual case." *Davis,* 656 F.2d at 159 (quoting H.R.Rep. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.C.C.A.N. 4566, 4576). "The plain language[of sections 841(a)(1) and 960(a)(1) ] confirms that Congress intended to treat different controlled substances as separate offenses." *Richardson,* 86 F.3d at 1553.

The cases upon which Vargas relies in support of his multiplicity argument are unavailing. *Parmagini v. United States,* 42 F.2d 721 (9th Cir.1930), is unpersuasive inasmuch as it was decided long before the CDAPCA and, therefore, before the for-

mulation of the aforementioned congressional intent. Furthermore, the statute at issue in *Parmagini* did not distinguish between different types and quantities of narcotics, nor did it provide for different punishments. *See* 21 U.S.C. §§ 171–174 (1924). In fact, the statute upon which *Parmagini* rests was specifically repealed by the enactment of the CDAPCA in 1970. Pub.L. No. 91–513, 84 Stat. 1291 (1970); *see also Anderson v. United States*, 189 F.2d 202 (6th Cir.1951).

In *United States v. Szalkiewicz*, 944 F.2d 653 (9th Cir.1991) (per curiam), it was held improper to convict a defendant of multiple counts of 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon) for his simultaneous possession of multiple weapons. *Id.* To decide *Szalkiewicz*, we relied upon our earlier decision in *United States v. Wiga*, 662 F.2d 1325 (9th Cir.1981), wherein we concluded that only one offense was generally chargeable under 18 U.S.C.App. § 1202(a)(1) (ex-felon in possession of firearm; repealed 1986), regardless of the number of firearms involved. *Wiga*, 662 F.2d at 1336–37. Taking "our place in line" with other circuits, we concluded that § 1202(a)(1) "was ambiguous as to the appropriate unit of prosecution" and, under the principles of lenity, only one conviction for simultaneous possession of multiple weapons was proper. *Id.* at 1336 (citing *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).

The ambiguity of sections 922(g)(1) and 1202(a)(1) stems from their use of the term "any." *See United States v. Kinsley*, 518 F.2d 665, 668–70 (8th Cir.1975). Both sections define the object of the offense as "any firearm." 18 U.S.C. § 922(g)(1); 18 U.S.C.App. § 1202(a)(1) (repealed 1986). In *United States v. Keen*, 104 F.3d 1111 (9th Cir.1996), we held that the use of the word "any" in

section 922(g)(1), rendered ambiguous any congressional intent to impose cumulative punishments for a single transaction involving multiple firearm violations. *Id.* at 1119. Neither the statutory scheme nor the legislative history regarding section 922(g)(1) clarified that ambiguity. *Id.* Accordingly, Vargas's reliance upon *Szalkiewicz* is unavailing.

This same rationale renders *Parmagini* and *Anderson* further distinguishable from the present case. In *Parmagini*, the violated statute, 21 U.S.C. § 174 (1924), defined the object of the offense as "any narcotic drug." *Parmagini*, 42 F.2d at 724–25. Likewise, in *Anderson*, the violated statute, 26 U.S.C. § 2553(a) (1939), defined the object of the offense as "any of the drugs mentioned in section 2550(a)." *Anderson*, 189 F.2d at 202–03. By prefacing the objects of the offense in these statutes with "any," "no clear intent to impose cumulative punishment ha[d] been expressed by Congress." *Keen*, 104 F.3d at 1119. "Seemingly this is because 'any' may be said to fully encompass (*i.e.*, not necessarily exclude any part of) plural activity, and thus fails to unambiguously define the unit of prosecution in singular terms." *Kinsley*, 518 F.2d at 667 (quoting *Brown v. United States*, 623 F.2d 54, 58 (9th Cir.1980)).

In this case, on the other hand, the statutes under which Vargas was convicted define the object of the offense as "a controlled substance." 21 U.S.C. §§ 841(a)(1), 960(a)(1). By prefacing the objects of the offense with "a," sections 841(a)(1) and 960(a)(1) express an unambiguous congressional intent to make each controlled substance a unit of prosecution. *See United States v. Alverson*, 666 F.2d 341, 347 (9th Cir.1982). "Use of the article 'a' stands in marked contrast to language in other [ ] statutes that have been interpreted to preclude prosecution for each object of the

offense." *Id.* Unlike "any," the article "a" cannot be said to fully encompass plural activity. *Cf. Brown,* 623 F.2d at 58. Rather, it encompasses singular, individualized activity and unambiguously defines the unit of prosecution in singular terms. *See id.*

In light of the foregoing, we hold that the indictment charging Vargas with separate counts for different controlled substances was not multiplicitous and no double jeopardy violation occurred.

## II. Severance

Likewise, the district court did not err in refusing to sever the marijuana counts from the cocaine counts. A district court's decision on a motion to sever is reviewed for abuse of discretion. *United States v. Parks,* 285 F.3d 1133, 1140 (9th Cir.2002). Vargas's marijuana and cocaine offenses were properly joined as they were clearly based on the same act or transaction. Fed. R. Cr. P. 8(a) (2000). Regardless, any error by the district court regarding Vargas's motion to sever was harmless because neither count was likely to have prejudiced the jury's decision as to the other counts. *See United States v. Sarkisian,* 197 F.3d 966, 976–77 (9th Cir.1999).

## III. Motion to Suppress

Vargas attempts to appeal the district court's denial of his motion to suppress evidence based upon the alleged unreliability of the anonymous tip on which the TECS alert was based. Vargas, however, never made such a motion. Rather, Vargas merely sought *leave* to file such a motion. The district court denied Vargas leave to file a motion to suppress as untimely and, thus, the motion was never filed or argued to the district court. The district court did not abuse its discretion.

This Court has discretion to decide whether to address an issue that was not reached by the district court if it is a purely legal question and the record was fully developed below. *United States v. Bigman,* 906 F.2d 392, 395 (9th Cir.1990). To determine whether an anonymous tip satisfies reasonable suspicion or probable cause, the totality of the circumstances must be considered, particularly the informant's veracity, reliability, and basis of knowledge. *United States v. Morales,* 252 F.3d 1070, 1074 (9th Cir.2001). This is clearly not a purely legal question and no record, let alone a full record was developed below. *See Bigman,* 906 F.2d at 395. Thus, this Court lacks discretion to consider the motion to suppress that Vargas never filed.

## IV. Search of the Spare Tire

■ Regardless of the foregoing, any such motion would have been properly denied by the district court. Motions to suppress are reviewed de novo. *United States v. Jones,* 286 F.3d 1146, 1150 (9th Cir.2002).

■ Routine border searches do not require a warrant or an articulable level of suspicion. *United States v. Okafor,* 285 F.3d 842, 845 (9th Cir.2002) (citing *United States v. Montoya de Hernandez,* 473 U.S. 531, 537–38, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)). The search of Vargas's vehicle was routine because it did not reach "the degree of intrusiveness present in a strip search or body cavity search." *United States v. Ramos–Saenz,* 36 F.3d 59, 61 (9th Cir.1994). The search also did not rise to the level of intrusiveness condemned in *United States v. Molina–Tarazon,* 279 F.3d 709, 713–17 (9th Cir.2002), because there was no risk of harm and Vargas's sense of security was not significantly diminished. Furthermore, even absent the anonymous tip, the totality of the circumstances established a particularized and objective basis for suspecting Vargas's

criminal activity. *See United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

## V. Constitutional Challenges

Vargas's challenge to the constitutionality of 21 U.S.C. §§ 841, 952, and 960 is foreclosed by this Court's recent decision in *United States v. Hernandez*, 314 F.3d 430, 437 (9th Cir.2002), which squarely rejected his claims. Equally foreclosed is Vargas's argument that the prosecution was required to prove *mens rea* as to each drug type. *See United States v. Carranza*, 289 F.3d 634, 644 (9th Cir.2002); *Hernandez*, 314 F.3d at 438.

## CONCLUSION

Based upon the foregoing, Vargas's conviction and sentence are AFFIRMED.