**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3293
_____

UNITED STATES OF AMERICA

v.

RAQUEL RIVERA,

Appellant

On Appeal from the District Court of the Virgin Islands
(St. Thomas Division)
(D.C. No. 3-20-cr-00020-001)
District Judge:  Honorable Robert A. Molloy

Argued on June 3, 2022

Before: JORDAN, MATEY and ROTH, <u>Circuit Judges</u>

(Opinion filed: July 19, 2023)

Matthew A. Campbell          **(ARGUED)**
Office of Federal Public Defender
1336 Beltjen Road
Suite 202, Tunick Building
St. Thomas, VI 00802

          Counsel for Appellant


Adam Sleeper          **(ARGUED)**
Office of United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802

          Counsel for Appellee

---

O P I N I ON

---

**ROTH**, Circuit Judge:

In 2018, the President signed into law the Agriculture Improvement Act, colloquially called the Farm Bill. The Farm Bill amended the Controlled Substances Act to exclude hemp from the definition of marijuana.[1] Both hemp and marijuana are the plant *Cannabis sativa L.,* which we will refer to simply as cannabis.[2] However, hemp has a tetrahydrocannabinol

---

[1] Pub. L. 115-334, 132 Stat. 4490.
[2] *Compare* 21 U.S.C. § 802(16) *with* 7 U.S.C. § 1639o(1).

("THC") concentration of 0.3% or less.[3]

In this case, a jury convicted Raquel Rivera of possessing marijuana with the intent to distribute. Rivera concedes that she possessed cannabis. She argues, however, that there was insufficient evidence to support her conviction because the government did not prove her cannabis had more than 0.3% THC, *i.e.*, that it was not hemp.

Contrary to Rivera's argument, the government did not need to prove this fact. By excluding hemp from the definition of marijuana, the Farm Bill carved out an *exception* to marijuana offenses: Someone with cannabis possesses marijuana *except* if the cannabis has a THC concentration of 0.3% or less. The government need not disprove an exception to a criminal offense unless a defendant produces evidence to put the exception at issue.[4] Because Rivera did not put the hemp exception at issue, the government bore no burden to prove that it was inapplicable. We will therefore affirm the District Court's judgment of conviction.

## I. BACKGROUND

### A. Facts

In April 2020, Rivera flew from Miami to Saint Thomas. At the Saint Thomas airport, Customs and Border Protection officers selected her for extra screening. As part of that process, they asked her to fill out a Customs Declaration Form. On the Form, and in statements to officers, Rivera

[3] 7 U.S.C. § 1639o(1).
[4] *See United States v. Polan*, 970 F.2d 1280, 1282–83 (3d Cir. 1992).

claimed ownership of two suitcases that she had retrieved from the baggage claim.

When officers later brought Rivera to an examination room, they again asked her if she owned both suitcases. This time, she said she did not own one of them. The suitcase that Rivera said she did not own had a baggage tag with her name on it. Rivera said the suitcase belonged to her friend, Amber Nieves. The other suitcase, which Rivera did not disclaim, had a baggage tag with Nieves' name on it.

Rivera said that Nieves came to Saint Thomas on an earlier American Airlines flight, but Nieves's suitcase was put on Rivera's flight and Nieves asked Rivera to pick it up for her. Rivera said that Nieves told her that the suitcase contained groceries. At another point, Rivera said she did not know if Nieves was traveling that day. Rivera also said she was coming to the Virgin Islands for the funeral of a friend. She said that someone she knows only by the name "Mama" would pick her up.

The officers ultimately searched both suitcases in front of Rivera. Each suitcase contained six vacuumed-sealed bags of a green, plant-like substance. The bags were concealed by clothes, towels, blankets, and dryer sheets. An officer testified that, throughout the search, Rivera "was mainly calm" and did not seem surprised.

A Department of Homeland Security special agent came to the airport to interview Rivera. When speaking with the agent, Rivera changed her story about who told her to pick up one of the suitcases. The agent later testified at trial that "a friend, a person she only knew as Bebar, asked her to pick up

Nieves' suitcase."[5] When the agent asked Rivera about the green, leafy substance in the suitcases, she said she did not know it was in the suitcases. She said the suitcases were packed by someone she knew as "Uncle" or "Tio."

Rivera told the agent that she did not have a bank account, debit card, or credit card, and that she had only a few dollars in cash. The agent testified that, at the end of the interview, he told Rivera that her "story didn't make any sense."[6] Rivera responded that her life doesn't make sense, or something to that effect.

## B. Procedural History

A grand jury charged Rivera with (1) conspiracy to possess, with intent to distribute, less than 50 kilograms of marijuana; and (2) possession, with intent to distribute, less than 50 kilograms of marijuana.

At trial, the government presented the testimony of a drug chemist, Rafael Martinez, who works in Customs and Border Protection's laboratory division. The District Court certified Martinez as an expert in forensic chemistry. Martinez testified that he performed three tests on the substance seized from Rivera, including one test that determines whether the substance contains THC. Based on the results of these tests, Martinez testified that the substance was marijuana. However, on cross-examination, Martinez stated that he did not determine the precise amount of THC in the substance—that is, whether the substance had more than 0.3% THC.

---

[5] *Id.* at 167–68.
[6] *Id.* at 182.

After the government presented its evidence, Rivera rested without presenting any evidence. Rivera then moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. Rivera argued that the government failed to prove its case beyond a reasonable doubt because it did not present evidence that there was more than 0.3% THC in the seized substance. The District Court deferred ruling on the motion until after the jury returned a verdict.

The District Court instructed the jury on the statutory definitions of "marijuana" and "hemp." The District Court also instructed the jury that it could rely on both direct and circumstantial evidence. The jury acquitted Rivera of the conspiracy offense and convicted her of the possession offense. After the jury returned its verdict, the District Court denied Rivera's motion for judgment of acquittal.

The District Court sentenced Rivera to 60 months of probation. She appealed.

## II. JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction under 48 U.S.C. § 1612 and 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

Under Federal Rule of Criminal Procedure 29, a defendant is entitled to judgment of acquittal if, viewing the record in the light most favorable to the government, no rational jury could have found the defendant guilty beyond a

6

reasonable doubt.[7]  We review de novo a district court's denial of a motion for judgment of acquittal.[8]

## III.  DISCUSSION

### A.  Statutory Background

With the passage of the Farm Bill, the Controlled Substances Act provided:

> **(16)(A)** Subject to subparagraph (B), the term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.

> **(B)** The term "marihuana" does not include—

> > **(i)** hemp, as defined in section 1639*o* of Title 7; or

> > **(ii)** the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is

---

[7] *United States v. Willis*, 844 F.3d 155, 164 n.21 (3d Cir. 2016).
[8] *Id.*

incapable of germination.[9]

In turn, Hemp is defined as:

> the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 [THC] concentration of not more than 0.3 percent on a dry weight basis.[10]

Separately, 21 U.S.C. § 885(a)(1) provides that the government does not need to "negative any exemption or exception set forth" in the subchapter of the Controlled Substance Act that defines marijuana.[11] Indeed, through § 885(a)(1), Congress placed "the burden of going forward with evidence" of "such exemption or exception" squarely on "the person claiming its benefit."[12]

We applied § 885(a)(1) in *United States v. Polan*.[13]

---

[9] 21 U.S.C. § 802(16). We use "marijuana" and "marihuana" interchangeably rather than alter quoted language to conform to our preferred spelling, "marijuana." As of December 2, 2022, the first line of Section 16(A) has been changed from "the term 'marihuana' means" to "the terms 'marihuana' and 'marijuana' mean." Pub. L. 117–215, § 2(b)(1). 16(B) has also been amended to read "The terms 'marihuana' and 'marijuana' do not include." Pub. L. 117–215, § 2(b)(2).

[10] 7 U.S.C. § 1639o(1).

[11] 21 U.S.C. § 885(a)(1).

[12] *Id.*

[13] 970 F.2d 1280, 1282–83 (3d Cir. 1992).

There, the government charged a doctor with violating a provision of the Controlled Substances Act that makes it unlawful to distribute a controlled substance "[e]xcept as authorized by this subchapter."[14]  We recognized that a physician falls within the authorized-by-this-subchapter exception when the physician distributes drugs in the usual course of his professional practice.[15]  However, because the exception is just that—an exception, not an element of the offense—the government did not have to allege in the indictment that the physician was not distributing drugs in the usual course of his practice.[16]  *Polan* illustrates how § 885(a)(1) relieves the government of any burden to negative an exception to certain drug offenses, at least until the defendant presents evidence to put the exception at issue.

## B. Analysis

Congress codified § 885(a)(1)'s rule over 50 years ago.[17]  However, the general principle that the government need not negative an exception to an offense has been settled for at least a century.[18]  In *Smith v. United States*, a decision

---

[14] 21 U.S.C. § 841(a)(1).

[15] *Polan*, 970 F.3d at 1282.

[16] *Id.*

[17] Pub. L. 91-513, Title II, § 515, Oct. 27, 1970, 84 Stat. 1279.

[18] *McKelvey v. United States*, 260 U.S. 353, 356–57 (1922). This principle is not limited to controlled substance offenses— the subject of § 885(a)(1).  To take one example:  For offenses that turn on whether a defendant used a "firearm," as defined by 18 U.S.C. § 921(a)(3), the government does not ordinarily need to prove that the defendant's weapon was not an antique firearm.  *United States v. Lawrence*, 349 F.3d 109, 121 (3d Cir.

that predates § 885(a)(1), the D.C. Circuit applied this general principle when a defendant was "convicted for violating the marihuana statutes."[19] At the time, the definition of marijuana in the U.S. Code was similar to the Code's definition of marijuana today.[20] Although the Code did not include the hemp exception, it set forth the same broad definition of marijuana and included a carve-out, like today's Code, for items such as "'the mature stalks'" of a cannabis plant.[21] Whereas today's Code states that marijuana "does not include" these items (and hemp),[22] the Code then stated that marijuana "'shall not include'" these items.[23]

In *Smith*, an expert testified that "certain cigarettes which [the defendant] sold 'contained marihuana' and that 'Cannabis sativa is marihuana.'"[24] However, "there was no testimony that the Cannabis sativa in [the defendant's] cigarettes was, or that it was not, derived from the sources

---

2003). Although § 921(a)(3) provides that the term "firearm" "does not include an antique firearm," we explained that the "exemption for antique firearms . . . is an affirmative defense that must be raised by [the] defendant and supported by some evidence before the government has to prove the contrary beyond a reasonable doubt." *Lawrence*, 349 F.3d at 123.

[19] *Smith v. United States*, 269 F.2d 217, 218 (D.C. Cir. 1959) (per curiam).

[20] *Compare id.* (quoting 26 U.S.C. § 4761(2), 68A Stat. 566) *with* 21 U.S.C. § 802(16).

[21] *Smith*, 269 F.2d at 218 (quoting 26 U.S.C. § 4761(2)).

[22] 21 U.S.C. § 802(16).

[23] *Smith*, 269 F.2d at 218 (quoting 26 U.S.C. § 4761(2), 68A Stat. 566).

[24] *Id.*

which the statute says marihuana 'shall not include.'"[25]  The D.C. Circuit nonetheless affirmed the defendant's conviction, relying on the principle that the defendant bears the burden of producing evidence that an exception to a criminal offense applies.[26]

This case is like *Smith*:  The government in *Smith* did not need to produce evidence that the defendant's substance was not one of the items that marijuana "shall not include." Here the government did not need to produce evidence that Rivera's substance was not hemp that marijuana "does not include."  This holding is dictated by the general principle, now codified at § 885(a)(1), that the government need not negative an exception to a criminal offense.

Rivera argues that the Farm Bill created a new element for marijuana offenses:  That a defendant's cannabis has more than 0.3% THC.   Put differently, Rivera tries to avoid § 885(a)(1) by arguing that the Farm Bill did not create an *exception* to marijuana's definition, but rather redefined marijuana as a general matter.  This argument fails.  The words that the Controlled Substances Act uses to describe marijuana's relationship with hemp—"does not include"—are plainly exception-creating words.  They differ from the words Congress used when defining THC concentration as an element of a substance:  Hemp is "the plant Cannabis sativa L. . . . with a delta-9 [THC] concentration of not more than 0.3 percent . . . "[27]   If Congress wanted to make cannabis's THC concentration an element of marijuana, it could have defined

---

[25] *Id.*

[26] *Id.*

[27] 7 U.S.C. § 1639o(1).

11

marijuana as "the plant Cannabis sativa L. . . . with a delta-9 [THC] concentration of more than 0.3 percent." Instead, Congress provided a general definition of marijuana, and then established exceptions with the words "does not include."

Legislative history confirms that the Farm Bill carved out hemp as an exception to marijuana. A House Conference Report expressly calls the hemp provision an exemption; in detailing conforming changes to the Controlled Substances Act, the Report states that the "Senate amendment amends the existing *exemptions* to include hemp" and the "Conference substitute adopts the Senate provision."[28]

To support her argument that THC concentration is an element of marijuana offenses, Rivera cites cases that analyze marijuana offenses under the categorical approach.[29] The specifics of that approach, and how courts applied it in the cases cited by Rivera, are irrelevant here. What matters is that none of the courts mentioned, much less applied, § 885(a)(1).[30] They therefore did not consider its rule that the government does not generally bear the burden of disproving an exception

---

[28] H.R. Conf. Rep. 115-1072 (emphasis added).

[29] *See* Appellant's Br. at 24–28 (citing *United States v. Bautista*, 989 F.3d 698, 704–05 (9th Cir. 2021); *United States v. Williams*, 850 F. App'x 393, 399–402 (6th Cir. 2021); *United States v. Batiz-Torres*, 562 F. Supp. 3d 28, 32–33 (D. Ariz. 2021); *United States v. Jamison*, 502 F. Supp. 3d 923, 927–31 (M.D. Pa. 2020); *United States v. Miller*, 480 F. Supp. 3d 615, 621–24 (M.D. Pa. 2020)).

[30] *Bautista*, 989 F.3d at 704–05; *Williams*, 850 F. App'x at 399–402; *Batiz-Torres*, 562 F. Supp. 3d at 32–33; *Jamison*, 502 F. Supp. 3d at 927–31; *Miller*, 480 F. Supp. 3d at 621–24.

to a criminal offense.

Separately, Rivera relies on *United States v. Vargas-Castillo*,[31] where the Ninth Circuit Court of Appeals examined the elements of marijuana offenses. In that case, a defendant was caught crossing the border with marijuana and cocaine, and a grand jury charged him with both (1) possessing and importing marijuana and (2) possessing and importing cocaine.[32] The question on appeal was whether the indictment was multiplicitous; that is, whether the grand jury charged multiple counts for a single offense.[33] The court held that the marijuana counts were not multiplicitous of the cocaine counts because the marijuana counts required the government to prove that the defendant's substance was marijuana and the cocaine counts required the government to prove that the defendant's substance was cocaine.[34] In reaching this conclusion, the court stated that to prove the marijuana offenses, the government had to prove that the defendant possessed "the part of the plant specifically included and not specifically excluded from the definition of 'marijuana.'"[35] The court observed, "While there may not be an express definition of 'cocaine,' it does not fall within the definition of Cannabis sativa L."[36]

To hold that the definition of cocaine is different from the definition of marijuana does not require a careful reading of the definition of marijuana, nor does it require an

---

[31] 329 F.3d 715, 719 (9th Cir. 2003).

[32] *Id.* at 717.

[33] *Id.* at 718–19.

[34] *Id.* 719–20.

[35] *Id.* at 719.

[36] *Id.*

examination of who bears the burden of production on exceptions to marijuana offenses. Perhaps for that reason, *Vargas-Castillo*, like the categorical approach cases cited by Rivera, does not mention § 885(a)(1). *Vargas-Castillo* therefore fails to dissuade us that Rivera bore the burden of producing evidence to put the hemp exception at issue.

## IV. CONCLUSION

Because the government did not bear the burden of proving that Rivera's cannabis was not hemp, we will affirm the judgment of the District Court.[37]

---

[37] The government argues that, even if it were required to prove that Rivera's cannabis was not hemp, we should affirm because the government presented sufficient evidence of this fact. We need not address this argument given our conclusion that the government was not required to prove that Rivera's cannabis was not hemp.

The District Court took the opposite tack: It decided there was sufficient evidence for the jury to conclude Rivera possessed marijuana rather than hemp, but it did not address whether the government bore the burden of proving that fact. Regardless, we may affirm the District Court "for any reason supported by the record," *United States v. Schneider*, 801 F.3d 186, 201 (3d Cir. 2015) (internal quotation marks omitted), and will do so here.