**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2264
_____

UNITED STATES OF AMERICA

v.

LOUIS MILTON WILLIS,

Appellant

_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Crim. No. 3:14-cr-00028-001)
District Judge: Honorable Curtis V. Gómez

_____

Argued: May 19, 2016

BEFORE: FUENTES,* VANASKIE, and RESTREPO,
*Circuit Judges*

(Opinion Filed: December 13, 2016)

_____

* Honorable Julio M. Fuentes assumed Senior Status on July
18, 2016.

_____

Joseph A. DiRuzzo, III
Jeffrey J. Molinaro **(Argued)**
Fuerst Ittleman David & Joseph
1001 Brickell Bay Drive
Suite 3112
Miami, FL 33131

*Counsel for Appellant*

Ronald Sharpe
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
St. Thomas, VI 00802

Justin D. Weitz **(Argued)**
United States Department of Justice
Criminal Division, Public Integrity Section
1400 New York Avenue, N.W.
Washington, DC 20005

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

Louis Milton Willis, the former Executive Director of the Legislature of the U.S. Virgin Islands, appeals his conviction on two counts of federal programs bribery and two counts of federal extortion. From about 2009 to 2011, the Legislature's main building on the island of St. Thomas underwent major renovations, which required the Legislature to seek out contractors. The United States claims that, during this period, Willis engaged in a pattern of corrupt conduct involving several contractors working on the renovations. Specifically, the United States claims that Willis solicited and received a $3,000 cash bribe from one contractor, a $10,000 "loan" and a new air conditioner for his home from a second, and a $5,000 kickback from a third. According to the United States, these payments and kickbacks were all made to Willis to ensure that the contractors would continue to be awarded work on the renovations. Willis was tried and convicted by a jury for charges related to the bribes solicited and was sentenced to a five-year prison term followed by a term of supervised release.

Willis argues that the District Court erred by (i) denying his pretrial motion to dismiss two counts of the indictment, (ii) denying his renewed motion for judgment of acquittal, and (iii) improperly admitting evidence of his prior acceptance of bribes.[1] Because we find all of Willis's arguments unavailing, we will affirm his conviction.[2]

---

[1] (Willis Br. 13.)

[2] The District Court had jurisdiction under 18 U.S.C. § 3241. We have jurisdiction under 28 U.S.C. § 1291.

## I.  BACKGROUND

Government officials are vested with a duty to uphold the law and serve the best interests of the public.  This case involves a government employee who betrayed the trust of this country's taxpaying citizens by abusing his power for his own benefit.

From 2009 to 2012, the United States Government appropriated $150 million in federal funds each fiscal year to the Government of the Virgin Islands.  During that period, Louis Milton "Lolo" Willis served as Executive Director of the Legislature for the Virgin Islands.  In that position, Willis's main role was to direct and advise division heads and to oversee administrative matters under the supervision of the President of the Legislature.  He was also delegated the power from the President of the Legislature to administer contracts on behalf of the Legislature.

During Willis's tenure as Executive Director, the Legislature's main building underwent major renovations, and Willis was substantially involved in securing contractors to perform those renovations.  Three of those contractors – Wilson John Marie, Frank James, and Alwin Williams, Sr. – later testified at Willis's trial.  Marie, James, and Williams stated that they all gave cash or other items of value to Willis to secure more government work or to ensure payment of their invoices for completed work.

Sometime in 2010, the U.S. Department of the Interior audited the Legislature's administrative section while the renovations were taking place.  The Department then released a report that highlighted a number of flaws in the administrative section's fiscal controls.  In the report, the

4

Department concluded that the Legislature had mismanaged public funds and that management of the Legislature lacked adequate financial safeguards. According to the report, some contractors worked on the renovation without any written agreements, and others obtained "sole-source" contracts, which Willis alone negotiated and issued without going through the normal process of soliciting bids from multiple vendors.

After a federal investigation, an indictment eventually issued for Willis's prosecution on extortion charges under 18 U.S.C. § 1951(a), which prohibits robbery or extortion affecting interstate commerce, and bribery charges under 18 U.S.C. § 666(a)(1), which outlaws theft and bribery in entities receiving more than $10,000 in federal funds. Before trial, Willis moved to dismiss the indictment. The District Court denied the motion, and the case proceeded to a jury trial.

During the trial, the United States presented substantial evidence in support of its case. The three contractors testified on behalf of the United States, claiming to have been involved in the bribery and extortion. Each of the contractors testified that they had given Willis things of value and had received some form of guaranteed work on the renovations in return.

Wilson Jean Marie was the first contractor to testify about his interactions with Willis. What he described, in short, was a basic kickback scheme. He stated that he was a carpenter in the U.S. Virgin Islands and claimed to have done renovation work on the Legislature's main building from 2010 to 2011. He further stated that Willis drafted a contract for his work on the renovations. Marie claimed that only Willis would review the hours that he submitted for work.

Willis would then apparently sign the invoice, and the Legislature's Business Office would in turn pay Marie. Marie stated that he would then give some of the money he had been paid by the Legislature to Willis.

Marie explained that the payments to Willis were "[t]o keep the job going, keep [Marie] going for the job,"[3] suggesting that he paid Willis to secure more renovation work. Marie also stated that he had given Willis "about $5,000," divided up among three payments.[4] Marie also described a 25% overhead fee that Willis paid him for his work, which apparently had no clear underlying purpose.

The second contractor to testify was Frank James. James said that he worked on the Legislature's main building during the renovation at a rate of about $2,100 per month under a contract arranged by Willis. He also testified that, at various points, Willis asked him for $1,000, which he said that he needed to pay back certain debts, but James refused. On another occasion, Willis asked James for $10,000, but, again, James refused. Nevertheless, James said that he went to Willis's home, inspected Willis's home air conditioning units, and replaced one of the units without charging him for the value of the unit or for his services. James estimated that the air conditioner had a value of about $1,100. Finally, James claimed that he wrote a company check for $10,000 to a paving company in order to assist Willis with paving his driveway. He described the money as a loan to Willis, but he said he was never repaid.

---

[3] (J.A. 390.)

[4] (*Id.*)

Alwin Williams Sr. was the last contractor to testify against Willis. Williams, the owner of a company that did excavation and demolition work, entered into a contract to excavate certain tree roots near the Legislature building. He claimed that while he was working on the renovations, Willis told him that he was having money issues and needed help. Shortly after, Williams gave Willis $3,000 in cash, a payment which he claimed was made to ensure that Willis would "look out for [Williams] down the road," presumably to ensure future awards for renovation work on the Legislature.[5] Williams also testified that, prior to serving as Executive Director of the Legislature, Willis had accepted certain bribes from Williams when Willis was working for the Virgin Islands Bureau of Internal Revenue. Williams claimed to have paid the bribes to Willis for the purpose of having a Bureau of Internal Revenue tax levy lifted from his bank accounts.

The testimony of these three witnesses was bolstered by another witness for the United States, Clifford Charleswell, who explained that Willis told him that he had received money from the contractors during the renovation project. All told, James, Williams, and Marie testified to giving Willis roughly $19,000 in kickbacks and other graft in exchange for over $300,000 in contract work on the renovations.

Michael Benjamin, the acting business director for the Legislature, also testified on behalf of the United States. He stated that Willis was in charge of managing the contracts for the renovation work and that Willis answered solely to the

---

[5] (J.A. 621.)

7

President of the Legislature. He also testified that Willis had the power to seek bids, find the best price, and select contractors. He further claimed that funds used for the payment of contractors came from the Government of the Virgin Islands' treasury.[6] As to the procurement of contractors, Benjamin stated that sometimes the contracts would go through legal counsel to the Legislature for review, but sometimes they did not. Once approved, the contracts would be signed and finalized by Willis or by the President of the Legislature. Finally, Benjamin stated that Willis had the power to bind the Legislature to payment, including during the time that the renovations took place.

Debra Gottlieb, the Budget Director for the Government of the Virgin Islands Office of Management and Budget, also testified. She stated that, as a matter of government accounting, federal funds were segregated from the Virgin Islands' general funds in the Treasury. She also testified that the Legislature only received money out of the general fund, which did not include federal funds. She claimed that the federal funds were kept in a separate treasury fund.

At the conclusion of the testimony on behalf of the United States, Willis moved for a judgment of acquittal. The court denied the motion. After the close of all of the

---

[6] Benjamin's testimony was ambiguous and conflicting as to whether or not those funds included only local funds or both local and federal funds. (J.A. 464-65) (stating that annual budget for the Legislature consisted of "local funds," but then claiming that the money was "appropriated" from "federal funds").

8

evidence, Willis then renewed his motion for judgment of acquittal, which the court again denied. Thereafter, the jury returned a verdict finding Willis guilty of federal programs bribery (Counts One and Three) and federal extortion (Counts Two and Four). However, he was acquitted as to Counts Five and Six, charges stemming from the alleged bribes involving Marie. This appeal followed.

## II. DISCUSSION

### A. Motion to Dismiss the Indictment

Willis asserts several challenges to his conviction on appeal.[7] First, he argues that the District Court erred by denying his pretrial motion to dismiss the indictment, claiming that the indictment failed to adequately set forth the elements of federal programs bribery under 18 U.S.C. § 666(a)(1)(B). In particular, he claims that Counts One and Three, the federal programs bribery charges, should have been dismissed for failure to allege a quid pro quo, that is, "a specific intent to give or receive something of value in exchange for an official act."[8]

Federal Rule of Criminal Procedure 7(c) requires an indictment to "be a plain, concise, and definite written statement of the essential facts charged." In *United States v.*

---

[7] We exercise plenary review over a challenge to the sufficiency of an indictment. *United States v. Bansal*, 663 F.3d 634, 656 (3d Cir. 2011).

[8] *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999) (emphasis omitted).

*Rankin*, we explained that an indictment is deemed sufficient so long as it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."[9] We have also said that "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense."[10] We should uphold the indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense."[11]

Given the language of the statute, the essential elements that the United States must prove to establish a violation of § 666 here are that, at the time of the offense: (1) Willis was an agent of a state government or agency; (2) he corruptly solicited, demanded, or accepted something of value with the intent to be influenced or rewarded in connection with any business of the state government or agency; (3) he accepted something of value in connection with the business or transactions of the state government or agency, where the transactions involved anything of value of $5,000 or more; (4) the state received in excess of $10,000 in federal funds in

---

[9] 870 F.2d 109, 112 (3d Cir. 1989) (internal quotation marks, alterations, and citation omitted).

[10] *Rankin,* 870 F.2d at 112.

[11] *United States v. Vitillo*, 490 F.3d 314, 324 (3d Cir. 2007) (internal quotation marks omitted).

any single year; and (5) he acted willfully and knowingly.[12] The statutory definitions under § 666(d)(4) further provide that the term "State" includes "a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States."

Willis contends that the indictment is insufficient as to the federal programs bribery charges because it fails to charge an essential element of the offense: a quid pro quo. Willis concedes that this Circuit has yet to decide whether § 666 requires charging and proof of a quid pro quo to sustain a conviction[13] and urges us to adopt such a requirement. To that end, Willis argues that the indictment must set forth facts supporting an allegation of "specific intent to give or receive something of value in exchange for an official act."[14]

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) authorizes a defendant to lodge a pretrial challenge to the sufficiency of an indictment for "failure to state an offense." There are two primary ways in which a defendant can proceed with such a challenge. First, a defendant may contend that, under the first *Rankin* element, "an indictment is insufficient on the basis that it does not satisfy the first requirement in that it fails to charge an essential element of

---

[12] *See* 18 U.S.C. § 666; *United States v. Cicco*, 938 F.2d 441, 444 (3d Cir. 1991); *cf. United States v. Foley*, 851 F. Supp. 507, 509 n.1 (D. Conn. 1994).

[13] *See United States v. Andrews*, 681 F.3d 509, 527 (3d Cir. 2012) ("We have never decided whether § 666(a)(2) requires proof of a *quid pro quo* . . . .").

[14] *Sun-Diamond*, 526 U.S. at 404-05.

the crime."[15]  Second, "because an indictment that merely 'recites in general terms the essential elements of the offense' does not satisfy the second and third requirements, a defendant may also claim that an indictment fails to state an offense on the basis that 'the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'"[16]  It appears that Willis asserts the first type of challenge, claiming that a quid pro quo should be an element of a § 666 offense and that the United States failed to include it in the indictment.

In response, the United States argues that § 666 does not include a quid pro quo requirement and that we should follow those Circuits that have declined to read such a requirement into the statute.[17]  The United States further

_____

[15] *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (internal quotation marks and citation omitted).

[16] *Id.* (quoting *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002), *abrogated on other grounds as recognized in United States v. Wright*, 665 F.3d 560, 567 (3d Cir. 2012)).

[17] We note that many of our sister circuits are split over this question.  *Compare United States v. Redzic*, 627 F.3d 683, 692 (8th Cir. 2010) (requiring a quid pro quo), *United States v. Ganim*, 510 F.3d 134, 148-50 (2d Cir. 2007) (same, on plain-error review), *and United States v. Jennings*, 160 F.3d 1006, 1020-22 (4th Cir. 1998) (finding plain error but affirming the conviction where the jury instruction omitted a quid pro quo element), *with United States v. McNair*, 605 F.3d 1152, 1187-88 (11th Cir. 2010) (no quid pro quo required), *United States v. Abbey*, 560 F.3d 513, 520-21 (6th Cir. 2009) (same), *and United States v. Gee*, 432 F.3d 713, 714-15 (7th Cir. 2005) (same).  "And to some extent,

contends that, even if we were to incorporate such a requirement into § 666, the indictment adequately alleged a quid pro quo as to all counts.

The bribery proscriptions are covered in subsections (a)(1)(B) and (a)(2) of § 666. Subsection (a)(1)(B), which covers one who requests a bribe, provides:

> Whoever . . . being an agency of an organization, or of a State, local, or Indian tribal government, or any agency thereof . . . corruptly solicits or demands . . . anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more . . . shall be fined under this title, imprisoned not more than 10 years, or both.[18]

Put another way, § 666 criminalizes the acceptance of a bribe of $5,000 or more by a government agent of a local government that receives more than $10,000 a year in federal funds if the agent *intends* to be influenced by the bribe when making a decision to enter into business on behalf of the government.

---

confusion reigns in this area because courts often use the term *quid pro quo* to describe an exchange other than a particular item of value for a particular action." *McNair*, 605 F.3d at 1190.

[18] 18 U.S.C. § 666(a).

Contrary to Willis's contention, each § 666 Count that he challenges clearly alleged a quid pro quo. For instance, Count One of the indictment alleged:

> In or about 2009 to 2010, at St. Thomas, in the District of the Virgin Islands, the defendant, LOUIS MILTON "LOLO" WILLIS while an agent of the Government of the Virgin Islands, did corruptly solicit, demand, accept, and agree to accept anything of value from any person with the intent to be influenced and rewarded in connection with any business, transaction, and series of transactions of such government, involving anything of value of $5,000 or more, **in that WILLIS accepted cash payments from Contractor A in exchange for WILLIS's use of his official position to provide favorable treatment for Contractor A in the award of contracting work at the Legislature of the Virgin Islands and to ensure payment to Contractor A for such work.**[19]

Similarly, Count Three of the indictment specifically alleged:

> In or about 2009 to 2011, at St. Thomas, in the District of the Virgin Islands, the defendant, LOUIS MILTON "LOLO" WILLIS while an agent of the Government of the Virgin Islands,

---

[19] (J.A. 76.) (emphasis added).

14

did corruptly solicit, demand, accept, and agree to accept anything of value from any person with the intent to be influenced and rewarded in connection with any business, transaction, and series of transactions of such government, involving anything of value of $5,000 or more, **in that WILLIS accepted $10,000, an air conditioning unit, and free labor associated with the installation of the air conditioning unit from Contractor B in exchange for WILLIS's use of his official position to provide favorable treatment for Contractor B in the award of contracting work at the Legislature of the Virgin Islands and to ensure payment to Contractor B for such work.**[20]

Thus, even if we were to require the United States to allege and prove a quid pro quo to establish a § 666 bribery offense – which we decline to do here – we conclude that it was adequately alleged in the indictment. Put simply, the indictment stated that Willis accepted cash payments from the various contractors in exchange for the use of his official position to provide favorable treatment for each contractor in the award of more contracting work at the Legislature. Moreover, we conclude that the indictment adequately alleged all other required elements of the offense: the parties, the relevant amounts of money exchanged, where the illegal

---

[20] (J.A. 78.) (emphasis added).

transactions allegedly occurred, that Willis used his public position unlawfully, the specific details of each transaction, and the improper purposes alleged under the relevant federal statutes. The District Court therefore properly refused to dismiss the federal programs bribery charges under Counts One and Three.

**B. The District Court properly denied Willis's renewed motion for judgment of acquittal.**

Next, Willis argues that the District Court erred in denying his renewed motion for a judgment of acquittal as to the federal programs bribery charges. He contends that the United States failed to satisfy the jurisdictional prerequisites to those charges because it failed to prove a sufficient nexus between Willis's alleged conduct or his status as Executive Director and any corresponding effect on federal funds. In particular, he asserts that: (1) the Legislature of the Virgin Islands is distinct from the Government of the Virgin Islands and received no federal funds; (2) he served as an agent of the Legislature, and not of the Government of the Virgin Islands, thus lacking sufficient connection to federal funds; and (3) the Government failed to adduce evidence sufficient to show that the Legislature received a federal "benefit" within the meaning of § 666. In short, all of his challenges hinge on his ability to separate himself from the federal funds, something we conclude that he cannot do.[21]

---

[21] We exercise plenary review over a district court's grant or denial of a motion for judgment of acquittal based on the sufficiency of the evidence. *United States v. Brodie*, 403 F.3d

### i. The Legislature of the Virgin Islands is a covered entity under § 666.

We first address Willis's contention that he is entitled to judgment of acquittal on the federal programs bribery charges because the Virgin Islands Legislature is separate and distinct from the Government of the Virgin Islands and therefore does not receive federal funds. Section 666 establishes federal jurisdiction over bribery and fraud committed by agents of covered entities, including a state or territorial "government, or any agency thereof," that receives in excess of $10,000 in federal funds in a twelve-month period.[22] The statute defines "government agency" as "a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board,

---

123, 133 (3d Cir. 2005). A judgment of acquittal is appropriate under Federal Rule of Criminal Procedure 29 if, after reviewing the record in a light most favorable to the prosecution, we determine that no rational jury could have found proof of guilt beyond a reasonable doubt. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (stating that, in addressing a Rule 29 motion, a district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence'" (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

[22] 18 U.S.C. § 666.

and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program."[23]

The purpose of this statute is to enhance the ability of the United States to "vindicate significant acts of theft, fraud, and bribery involving federal monies" and "to protect the integrity of the vast sums of money distributed through Federal programs."[24] The history of § 666 reveals Congress's intent to root out public corruption. In enacting § 666 as part of the Comprehensive Crime Control Act of 1984, Congress expressly intended "to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a federal program."[25]

Moreover, courts have specifically recognized that § 666 is broad in scope.[26] As the Sixth Circuit noted in *United States v. Valentine*, "it is apparent that Congress intended to expand the federal government's prosecutorial

---

[23] *Id.*

[24] S. Rep. No. 98-225, at 369-70 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3510.

[25] *Id.* at 369.

[26] *See Vitillo*, 490 F.3d at 321 (stating that § 666 is "broad in scope, as that statute seeks to ensure the integrity of vast quantities of federal funds" (citation and internal quotation omitted)).

power to encompass significant misapplication of federal funds at a local level."[27]

In addressing Willis's first argument that the Legislature falls outside the scope of § 666, it is first important to keep in mind the structure of the Government of the Virgin Islands, which was created under the "Revised Organic Act," 48 U.S.C. § 1541 *et seq.* That statute vests the power of the Government of the Virgin Islands in three coequal branches: the legislative, the executive, and the judicial. These three branches constitute one territorial entity, which is substantially funded by the federal government. Indeed, it is undisputed that the Government of the Virgin Islands received $150 million dollars in federal funds per year from 2009 to 2012 and that the renovations took place during this time. Thus, contrary to Willis's assertion, we conclude the Legislature is part and parcel of the Government of the Virgin Islands, and it received federal funds.

Willis nonetheless relies on Debra Gottlieb's testimony wherein she claimed that the Legislature never received federal funds, as it was funded by a segregated, general fund consisting of local funds derived from territorial sources. Based on this testimony, Willis claims that the Legislature (1) lacks direct control over the disbursement of federal funds, and (2) did not receive any federal funds.

We begin by noting that courts have been wary of interpreting § 666 too narrowly. Indeed, the Supreme Court has repeatedly avoided constructions of § 666 that would impose limits beyond those set out in the plain meaning of the

---

[27] 63 F.3d 459, 463 (6th Cir. 1995).

19

statute. In *Salinas v. United States*,[28] for example, the Court rejected a defendant's attempt to read into the statute an extra-textual requirement of proof that "the bribe in some way affected federal funds, for instance by diverting or misappropriating them, before the bribe violates § 666(a)(1)(B)."[29] In reaching its conclusion, this Court pointed to the "enactment's expansive, unqualified language, both as to the bribes forbidden and the entities covered."[30]

The Supreme Court has also rejected an argument that § 666 is unconstitutional because it does not require a nexus between the bribe and some federal monies or program. In *Sabri v. United States*,[31] the Court noted that the enactment of § 666 was "an instance of necessary and proper legislation" to execute Congress's spending power, especially in light of the fact that "other legislation had failed to protect federal interests."[32] The Court stated that while "not every bribe or kickback offered or paid to agents of governments covered by § 666(b) will be traceably skimmed from specific federal payments, or show up in the guise of a quid pro quo for some dereliction in spending a federal grant," the absence of such links does not "portend[ ] . . . enforcement beyond the scope of federal interest, for the reason that corruption does not have to be that limited to affect the federal interest."[33] And,

---

[28] 522 U.S. 52 (1997).

[29] *Id.* at 55-56.

[30] *Id.* at 56.

[31] 541 U.S. 600 (2004).

[32] *Id.* at 607.

[33] *Id.* at 600-01.

perhaps most relevant to the present case, the Court said that "Congress was within its prerogative to ensure that the objects of spending are not menaced by local administrators on the take."[34]

Willis's related argument that the Legislature of the Virgin Islands never "received" federal funds is also undermined by the First Circuit's 2013 decision in *United States v. Fernandez*,[35] relied upon by the District Court in its opinion. In *Fernandez*, the court found that the territorial Legislature of Puerto Rico was part and parcel of the government of the territory, and that the principles of separation of powers did not exempt an agent of the Legislature of Puerto Rico, a Senator, from § 666's coverage.[36] The First Circuit's holding also supports our conclusion that the Legislature was part and parcel of the Government of the Virgin Islands, a federally funded entity.

Therefore, we conclude that Willis's narrow reading of § 666's scope is inconsistent with the legislative intent of the statute and the broad interpretations of that law advanced by the Supreme Court. Thus, we further conclude that the Legislature, as a coequal branch of the Government of the Virgin Islands – itself a territorial "government" that receives in excess of $10,000 in federal funds in a twelve-month period – fell within the scope of § 666 by receiving federal funds.[37] We therefore reject Willis's argument that he cannot

---

[34] *Id.* at 601.

[35] 722 F.3d 1 (1st Cir. 2013).

[36] *Id.* at 10-12.

[37] 18 U.S.C. § 666.

21

face criminal liability under § 666 because the Legislature received funds only from territorial sources.

### ii. Willis was an "agent" within the meaning of § 666.

In attempting to further sever his connection from the federal funds at issue, Willis also argues that he was not "a person authorized to act on behalf of . . . a government" as a "servant or employee, . . . director, officer, manager, and representative."[38] We find this argument equally unpersuasive. The plain language of the statute merely requires that the individual be "authorized to act on behalf of another person or government."[39] Testimony at trial established that Willis, as Executive Director of the Legislature, had the authority to "go out and seek offers for a particular project . . . [w]hatever project [was] deemed necessary"; that he could determine whether or not it "was the best price"; and that he or the President of the Legislature could unilaterally enter into a contract for whatever price that person wanted.[40] Thus, Willis's claim that he was not an agent of the government is without merit.

In *Fernandez*, the First Circuit rejected a similar argument, concluding that two senators were agents of the government because they were a part of the limited category of government officials who represent the "State" as a

---

[38] 18 U.S.C. § 666(d)(1).

[39] *Id*.

[40] (J.A. 470.)

22

whole.[41]   As the United States correctly notes here, *Fernandez* supports the conclusion that a territorial legislature is part and parcel of the government of the territory, and that the principles of separation of powers do not excuse an agent of the Legislature from § 666's coverage.   Willis simply cannot escape the conclusion that he was an agent of the Virgin Islands' Government, given his substantial power to enter into contracts on behalf of the Legislature.

### iii. The Legislature received a "benefit" within the meaning of § 666.

Willis next argues that the United States failed to present evidence of the "structure, operation, and purpose" of the federal funds sufficient to show that the Virgin Islands Legislature received a federal "benefit" within the meaning of § 666.[42]   Section 666, by its plain terms, limits its application to qualifying entities that receive "benefits in excess of $10,000 . . . under a Federal Program."[43]   Although the term "benefit" is not defined in the statute, Willis nonetheless argues that the United States failed to meet its burden of demonstrating that the Government of the Virgin Islands received some type of specific beneficial interest from the federal funds to satisfy § 666's jurisdictional requirements. We find this argument to be without merit.

---

[41] 722 F.3d at 9.

[42] (Willis Br. 29.)

[43] 18 U.S.C. § 666(b).

In *Fischer v. United States*,[44] the Supreme Court found § 666 to be constitutional as applied where the identified benefit was far more attenuated than the one involved here.[45] There, the federal funds received by healthcare providers were Medicaid reimbursement payments made by the federal government to the providers in exchange for services rendered to Medicaid and Medicare recipients.[46] Rejecting the notion that the patients – as opposed to the service providers – received the only "benefit" under the program, the Court stated that the service providers "derive significant advantage by satisfying the participation standards imposed by the Government. These advantages constitute benefits within the meaning of the federal bribery statute."[47] The *Fischer* Court also emphasized that § 666 is "expansive . . . both as to the [conduct] forbidden and the entities covered."[48] Thus, the *Fischer* Court read the statute to reveal Congress's "expansive, unambiguous intent to ensure the integrity of organizations participating in federal assistance programs."[49]

Here, as the District Court noted, the link to a benefit is fairly direct. The Government of the Virgin Islands received $150 million per year during the time that Willis was Executive Director. Those funds, paid directly by the federal government, significantly supported the Government of the

---

[44] 529 U.S. 667 (2000).

[45] *Id.* at 680.

[46] *Id.*

[47] *Id.*

[48] *Id.* (citing *Salinas* 522 U.S. at 56).

[49] *Id.*

24

Virgin Islands during that period. In consequence, we find Willis's argument that the Virgin Islands did not receive a "benefit" within the meaning of § 666 completely unavailing.

Because we conclude that all of Willis's challenges to the applicability of § 666 lack merit, we will therefore affirm the District Court's denial of Willis's judgment of acquittal as to Counts One and Three.

### C. Section 666 does not violate the Tenth Amendment or the Spending Clause.

Willis also challenges his conviction under § 666 on Tenth Amendment and Spending Clause grounds. Willis claims that, to permit the application of § 666 as to his conduct in these circumstances would "transform § 666 into a general police power," in violation of the Tenth Amendment.[50] He further claims that the application of § 666 to his conduct would exceed Congress's power under the Spending Clause.[51] He is wrong.

First, the Tenth Amendment reserves certain powers to "the States," but it has never been extended to the Virgin Islands. In fact, as the United States again correctly points out, the Revised Organic Act of 1954, which dictates the limits of constitutional protection afforded to the territory, incorporates only the first nine amendments and not the Tenth

---

[50] (Willis Br. 16.)

[51] (*Id.*)

Amendment.[52]  At least one other court has also explicitly stated that "[t]he limits of the Tenth Amendment do not apply to" a constitutional territory because the territory's "powers are not '[those] reserved to the States' but those specifically granted to it by Congress under its constitution."[53]  We agree that the Tenth Amendment does not apply here and therefore reject Willis's argument.

Willis also claims that to apply § 666 to his conduct would "exceed the proper bounds of Congress under the spending clause."[54]  Under the Spending Clause, Congress has the power to "appropriate federal moneys to promote the general welfare, Art. I, § 8, cl. 1, and it has corresponding authority under the Necessary and Proper Clause, Art. I, § 8, cl. 18, to see to it that taxpayer dollars appropriated under that power are in fact spent for the general welfare."[55]  With respect to those powers, in *Sabri v. United States*, the Supreme Court noted that the enactment of § 666 was "an instance of necessary and proper legislation" to execute Congress's spending power, especially in light of the fact that "other legislation had failed to protect federal interests."[56]  Willis's Spending Clause argument is thus foreclosed by Supreme Court precedent.

---

[52] 48 U.S.C. § 1561.

[53] *Franklin Cal. Tax-Free Trust v. Puerto Rico*, 805 F.3d 322, 344 (1st Cir. 2015) (quoting U.S. Const. art. IV, § 3, cl. 2; amend. X), *aff'd*, 136 S. Ct. 1938 (2016).

[54] (Willis Br. 32.)

[55] *Sabri v. United States*, 541 U.S. 600, 605 (2004).

[56] *Id.* at 607.

**D. The District Court properly admitted evidence of Willis's prior acceptance of bribes.**

Finally, Willis contends that the District Court erred in denying his motion to exclude certain prior-act evidence under Federal Rule of Evidence 404(b).[57] Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove character or demonstrate action in conformity with those acts.[58] Prior-act evidence, though, may be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[59] To be admissible, prior-act evidence must satisfy the test set forth in *Huddleston v. United States*.[60] As the Supreme Court stated there, the proffered evidence must be: (1) offered for a proper purpose under Rule 404(b)(2); (2) relevant to that purpose; (3) sufficiently probative under the Rule 403 balancing requirement; and (4) accompanied by a limiting instruction, if

---

[57] We review the District Court's evidentiary rulings principally for abuse of discretion. *United States v. Kolodesh*, 787 F.3d 224, 234 n.12 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 281 (2016). To demonstrate an abuse of discretion, Willis must show the district court's action was "arbitrary, fanciful or clearly unreasonable." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009).

[58] Fed. R. Evid. 404(b)(1).

[59] Fed. R. Evid. 404(b)(2).

[60] 485 U.S. 681 (1988).

requested.[61]  We have also emphasized that the proffered evidence must fit "into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged."[62]

Willis's defense at trial was that he did not know that the money he solicited and received from contractors constituted bribes and instead understood them to be loans. The United States offered evidence that Willis had accepted a kickback bribe from Williams when Willis was the Director of the Virgin Islands Bureau of Internal Revenue, in exchange for lifting a lien on Williams's bank account. The United States offered this evidence to demonstrate that Willis was not mistaken about the nature of the transactions involved in the Legislature's renovation and fully intended to accept bribes and commit extortion. The prior-acts were also offered as evidence of motive and knowledge.

Contrary to Willis's assertion, there was a strong nexus between this evidence and his state of mind, his intent, his knowledge, and the absence of any mistake about the transactions. This evidence showed that he knew that these payments were not loans, that they were not gifts, and that he intended to accept cash in exchange for handing out more government contract work. Moreover, the record reveals that the District Court discussed the issues substantially with the

---

[61] *Id.* at 691-92.

[62] *United States v. Green*, 617 F.3d 233, 250 (3d Cir. 2010) (citing *United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994)).

parties, accepted submissions from them, and further engaged with them at a pretrial omnibus hearing before ruling on the admission of the evidence. Before admitting the evidence, the court also provided a specific limiting instruction to the jury as a prophylactic measure against any tendency by the jury to consider the evidence for improper purposes. Consequently, we conclude that the District Court did not abuse its discretion by admitting evidence of Willis's prior conduct.[63]

## III. CONCLUSION

For these reasons, and those set forth in the District Court's thorough and persuasive opinion, we will affirm the judgment of the District Court.

---

[63] We have thoroughly reviewed all of Willis's remaining arguments, including his Commerce Clause challenge to his conviction of Hobbs Act extortion under 18 U.S.C. § 1951(a), and find them to be without merit.