**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3132

_____

UNITED STATES OF AMERICA

v.

ADVANTAGE MEDICAL TRANSPORT, INC.;
SERGE SIVCHUK,
Appellants

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Action Nos. 1-12-cr-00004-001 & 1-12-cr-00004-002)
District Judge: Honorable Christopher C. Conner

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 18, 2018

_____

Before:  GREENAWAY, JR., RESTREPO, and BIBAS, *Circuit Judges*

(Opinion Filed: September 12, 2018)

_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Appellants Advantage Medical Transport, Inc. ("Advantage") and Serge Sivchuk appeal from two separate amended judgments of conviction. Specifically, each Appellant appeals from the District Court's order denying their respective motions to dismiss both a count in the indictment and all counts of the superseding information charging violations of 18 U.S.C. § 1035.[1] Appellants argue that neither the indictment nor the superseding information charge a criminal offense based on a ruling of our Court because certain falsified documents were not "material" pursuant to § 1035. Accordingly, they contend that the District Court's denial of their respective motions to dismiss should be reversed. We disagree, and will affirm the District Court's amended judgments of conviction.

## I.      Facts & Procedural Background

Sivchuk was the sole owner of Advantage, an ambulance transport services business, and served as its president, director, and managing employee. Advantage provided nonemergency transportation to, among others, qualified Medicare beneficiaries who needed transport to regularly-scheduled dialysis treatment. Medicare approved and authorized Advantage to provide these services, and provided reimbursements for qualifying services.

---

[1] Advantage pled and was sentenced on counts 1–14 of the superseding information, and Sivchuk pled and was sentenced on count 15 of the indictment.

An audit and subsequent investigation of Advantage, which were conducted by Medicare, revealed that fourteen "trip sheets"[2] had been fraudulently altered at the behest of Sivchuk to remove references indicating that patients had been ambulatory when they were transported by Advantage.[3]  A grand jury investigation revealed that Sivchuk had told several EMTs that the original trip sheets were lost and needed to be re-written in a manner that concealed the patients' ambulatory functions.  Some EMTs complied and signed the re-written trip sheets; the ones that did not, however, had their signatures forged on trip sheets Sivchuk ordered re-written.  Sivchuk and another employee were indicted in January 2012 for twenty-nine counts of health care fraud, including making false statements relating to health care matters.  The indictment also alleged that Advantage had billed Medicare for unnecessary ambulance transports for twenty-six patients.  Subsequently, Advantage was charged with making false statements relating to health care matters in a superseding information in April 2013.

In February 2013, Sivchuk pled guilty to a single count of making false statements in health care matters, in violation of 18 U.S.C. § 1035.  Advantage eventually pled guilty

---

[2] A "trip sheet" is a form document that has a narrative section for emergency medical technicians ("EMTs") to complete at each ambulance transport.  Trip sheets, among other things, identify the patients, date and time of transport, physical condition and ambulatory abilities of the patient, and any other concerns or relevant observations.

[3] The fraud was intended to remove references that the patients were "able to walk, stand, or otherwise move on their own." *United States v. Advantage Med. Transp., Inc. (Advantage I)*, 698 F. App'x 680, 683 (3d Cir. 2017) (not precedential).  Hence, rendering them eligible for reimbursement.

3

to fourteen counts of the same offense in April 2013. After the pleas, a presentence investigation report ("PSR") was prepared for sentencing. The PSR determined that Medicare's financial loss from the scheme was $740,300 for both Advantage and Sivchuk, resulting in a Guidelines range of thirty to thirty-seven months in prison and a fine ranging from $6,000 to $1,480,620 for Sivchuk, and a fine ranging from $592,248 and $1,1184,496 for Advantage. Advantage and Sivchuk objected, and the District Court, after determining that five of the twenty-six patients would be considered in the loss calculation, ultimately sentenced Sivchuk to twenty-four months' imprisonment, with a $300,000 fine, and fined Advantage $250,000.

Advantage and Sivchuk appealed their sentences to this Court. *See United States v. Advantage Med. Transp., Inc. (Advantage I)*, 698 F. App'x 680 (3d Cir. 2017) (not precedential). They argued, inter alia, that the District Court had improperly calculated the losses attributed to them by including three of the five patients, who were categorically permitted to receive such services and should have been excluded from the calculation because their treatment was medically necessary. *See id.* at 686. The panel agreed, and vacated Sivchuk's sentence and remanded to the District Court for it to recalculate Medicare's loss and adjust the sentence. *Id.* at 689. The panel held that the three patients' "transports satisfied the regulation [used to determine Medicare's loss] in effect at the time they occurred," *id.* at 686, and acknowledged that "the plain language of the regulation, as written at the time Advantage transported these [patients], required

4

nothing more than a physician's certification that the transport was medically necessary. Advantage did not have to second guess these certifications as long as they were legally obtained," *id.* at 687. The panel concluded that "the regulation can be plainly read to say that, where the transportation service was scheduled, repetitive, and the doctor's certification addressed the beneficiary's medical need for such transport, further inquiry was not called for." *Id.*

After remand, the Government conceded that the remaining patients whose transports were included in the District Court's loss calculation held valid certificates of medical necessity ("CMN"), which, under the panel's reasoning, supported Appellants' claim for reimbursement. Accordingly, Sivchuk and Advantage filed motions to dismiss the indictment and superseding information, arguing that the false statements admitted to were not "material" under the statute. After full briefing, the District Court denied the motions, and resentenced Sivchuk to time served, a $1,000 fine, and ordered him and Advantage to pay $2,712.12 in restitution. Advantage was also assessed a fine of $6,300. This timely appeal followed.

## II.    Jurisdiction

The District Court had jurisdiction arising under 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

This Court employs a mixed standard of review when reviewing a motion to dismiss an indictment. *See United States v. Menendez*, 831 F.3d 155, 164 (3d Cir. 2016).

5

As such, "[w]e review the District Court's legal conclusions *de novo* and its factual determinations, including its findings about the contents and purposes of the acts alleged in the Indictment, for clear error." *Id.*

## III. Discussion

Advantage and Sivchuk contend that the District Court erred in denying their motions to dismiss the indictment and superseding information. According to them, the charging documents failed to allege a criminal offense under § 1035 because "the statements contained in the . . . trip sheets" and their "efforts to conceal the ambulatory abilities of the beneficiaries, while false and misleading, were not 'material' in determining the existence of medical necessity for the transports or in Medicare's corresponding obligation to cover the transports." Adv. Br. 14.

Section 1035(a) provides:

> Whoever, in any matter involving a health care benefit program, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or
>
> (2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry,
>
> . . . shall be fined . . . or imprisoned[.]

The standard for "materiality" is well settled. "A fact is 'material' if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the

6

decisionmaking body to which it was addressed.'" *United States v. McLaughlin*, 386 F.3d 547, 553 (3d Cir. 2004) (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)). Likewise, a statement may be material even if no agency actually relied on the statement in making a decision. *See, e.g.*, *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995). The inquiry, then, "is whether the test for 'materiality' necessarily requires that a false statement be capable of influencing an *actual*, *particular* decision of the agency at issue, or whether the test requires only that a statement be of a type that would naturally tend to influence a *reasonable* decisionmaking agency in the abstract." *United States v. McBane*, 433 F.3d 344, 350 (3d Cir. 2005) (emphasis in original).

Although the false statements were not material for loss calculation, *see Advantage I*, 698 F. App'x at 686–87, they were nonetheless material to a myriad of other government interests, such as, inter alia, corroborating contemporaneous ambulatory capabilities, preventing fraudulent transactions, verifying independent medical assessments and investigations, sentencing, *see id.* at 689–92, and maintaining accurate medical records. We therefore agree with the Government's contention that the false statements here are material because they are of the type that would naturally tend to influence Medicare's decisionmaking authority when issuing reimbursements. *See McBane*, 433 F.3d at 350 (recognizing that "materiality" requires a false statement capable of influencing a reasonable decisionmaking body).

7

Appellants also assert that *Advantage I* makes the indictment and superseding information deficient because it forecloses reliance on the veracity of the trip sheets at issue, and the charging documents do not allege that the falsified trip sheets influenced physicians' assessments related to the issuances of CMNs.

Counts 15 through 28 of the indictment[4] focused on Sivchuk's efforts to deceive Medicare and its contractor by making materially false statements related to health care payments with "re-written and forged ambulance Trip Sheets . . . in order to conceal the fact the patients were ambulatory." App. 81. Advantage was later charged with making false statements in violation of § 1035 through superseding information. Specifically, the indictment and superseding information charged that, "[o]n or about September 28, 2010," App. 80, 93, Sivchuk and Advantage:

> did, in a matter involving a health care benefit program, knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device a material fact, and did make and cause to be made, materially false, fictitious, and fraudulent statements, and did knowingly and willfully make and use, and cause to be made and used materially false writings and documents knowing same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, in that the . . . re-written and forged ambulance Trip Sheets were caused to be created by the defendants in order to conceal the fact the patients were ambulatory, and then were submitted to Medicare's contractor (Highmark) in response to

___

[4] Only count 15 of the indictment is at issue regarding Sivchuk's culpability.

8

> a pre-payment review in support of the defendants' fraudulent claims for ambulance transport services[.][5]

App. 81 (footnote added); *see* App. 93–94.

"[A]n indictment is facially sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Stevenson*, 832 F.3d 412, 423 (3d Cir. 2016) (quoting *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012)). It is also well settled that "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." *Id.* at 424 (quoting *Huet*, 665 F.3d at 595). Accordingly, an indictment should be upheld "unless it is so defective that it does not, by any reasonable construction, charge an offense." *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016) (quoting *United States v. Vitillo*, 490 F.3d 314, 324 (3d Cir. 2007)).

We conclude that the indictment and the superseding information adequately alleged an offense in violation of § 1035. As noted above, the charging documents stated that Sivchuk and Advantage made materially false statements by fraudulently altering trip sheets in order to deceive Medicare into issuing reimbursements. In so doing, the

---

[5] The individuals in the indictment and superseding information reflect the dates various violations occurred based on the predicate facts set forth.

9

charging documents adequately informed Appellants of the statute that was alleged to be violated, listed the elements of a violation under § 1035, and specified the time period during which the violations transpired. *See Huet*, 665 F.3d at 595 (stating indictment is generally facially sufficient when "it informs the defendant of the statute he is charged with violating, lists the elements . . . under the statute, and specifies the time period" when violations occurred). Thus, the District Court properly denied Appellants' respective motions.[6]

## IV.    Conclusion

For the foregoing reasons, we shall affirm the District Court's amended judgments of conviction.

---

[6] Because we conclude that the indictment and superseding information sufficiently charged Sivchuk and Advantage of a crime in violation of § 1035, we need not address their alternative argument involving a "change in the law."