**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1204
_____

UNITED STATES OF AMERICA


v.

CHRISTOPHER LOPEZ,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 1:22-cr-00040-001)
District Judge:  Honorable Jennifer P. Wilson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 9, 2025
_____

Before:  KRAUSE, PHIPPS, and CHUNG, Circuit Judges

(Filed: January 22, 2026)
_____

OPINION[*]
_____

CHUNG, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Christopher Lopez was found guilty by a jury of conspiring to conduct a financial transaction with the intent to conceal the nature and source of property represented by a law enforcement officer to be proceeds of a specified unlawful activity. Lopez unsuccessfully moved for a judgment of acquittal and for a new trial. On appeal, Lopez argues that the District Court erred in denying his motions because the evidence was insufficient to prove that he agreed to commit the substantive offense, and the underlying indictment was constructively amended. For the reasons set forth below, we will affirm the judgment of conviction.

I.      BACKGROUND[1]

Lopez owned and operated a used car dealership named C&D Motorsports. Lopez's co-defendant, Mike Torres, was one of his employees, a car salesman.

On October 16, 2019, two undercover federal agents, John Thompson and Lisa Ulrikson, visited C&D, pretending to be romantic partners seeking to buy a used car. There, Torres took Thompson for a test drive. During the test drive, Thompson told Torres "I don't need nothing in my name." A1009. Thompson then ventured, "I don't even know if I need to keep it real," to which Torres responded, "Go ahead and keep it. I ain't no federal agent." A1009. Thompson then said he had "been pushing cocaine for a minute," and that he had done so since he "was about 18." A1009. Thompson thus said his purchase "got to be cash." A1010. Torres responded, "I got you and shit." A1010.

---

[1]      Because we write for the parties, we recite only the facts pertinent to our decision.

2

Upon returning to the dealership, Thompson was introduced to Lopez. Thompson told Lopez that he wanted to purchase a vehicle and that he needed it to be in Ulrikson's name. Thompson also shared with Lopez that he had been selling cocaine since he was 18. Thompson stated to Lopez that he "wanted to make sure everything's good," and that he did not "need government forms." A1034-35. Lopez responded, "we'll make it work." A1035. Lopez also referenced a song called the "Ten Crack Commandments," which Thompson testified at trial is a song about drug dealers evading detection. Thompson testified that he interpreted this reference to mean that Lopez understood Thompson to be a drug trafficker. Thompson and Ulrickson left without buying a car.

Approximately two months later, Thompson reached out to Torres by text message. Torres told Thompson he remembered him and asked him "cash?". Thereafter, on December 11, 2019 Thompson and Ulrickson returned to C&D. Upon arrival, Lopez and Torres greeted Thompson and both remembered Thompson's October visit. Thompson asked Lopez "[e]verything good though, right, about the papers?", and Lopez again responded affirmatively. A1051-52. Thompson and Ulrickson went for a test drive. After returning to C&D from the test drive, Thompson suggested he would "send some of my people" to Lopez for car sales, noting they "care about them government forms." A1067. Lopez replied, "I hear ya." Id. Thompson once more brought up his purported drug dealing to Lopez, saying that he had "been doing this, hustling since I was 20 years old." A1070. He then purchased the vehicle with over $30,000 in cash paid to Torres. Ulrikson was listed as the purchaser of the car on the Receipt for Down Payment and signed the receipt. Ulrikson also signed a document registering the vehicle and title

3

in her name and Torres used her license for the paperwork. Lopez's signature was on the Certificate of Title that transferred title of the vehicle to Ulrikson. Thompson was not listed on any of the records signed as part of the purchase.

On February 2, 2022, Lopez and Torres were indicted on one count of conspiring in violation of 18 U.S.C. § 1956(h) ("conspiracy to commit money laundering") to commit the criminal object of conducting a financial transaction involving funds represented by a law enforcement officer to be proceeds of a specified unlawful activity, namely drug trafficking, with the intent to conceal the nature and source of said funds, a violation of 18 U.S.C. § 1956(a)(3)(B) ("concealment money laundering").[2]

Beginning on February 12, 2024, a four-day jury trial was held. During the jury trial, the District Court and counsel for Lopez each stated once, incorrectly, that Lopez was charged with the criminal object of the conspiracy (i.e., money laundering), rather than conspiracy. On many more occasions, the parties and the District Court properly referred to the charged offense as conspiracy to commit money laundering. In its closing arguments, the government stated that it was unnecessary to prove that Lopez and Torres explicitly agreed to conceal the represented unlawful nature of Thompson's money, and counsel for Torres stated the government had to prove Torres intended to conceal the true

[2]    Lopez was charged with conspiring to commit two criminal objects in violation of 18 U.S.C. § 1956(h): concealment money laundering, as noted above, and conducting a financial transaction with the intent to avoid a transaction reporting requirement, a violation of 18 U.S.C. § 1956(a)(3)(C). The jury found that Lopez did not conspire to avoid a transaction reporting requirement, and he does not bring any challenge related to that criminal object.

4

ownership of the purchased vehicle. At the close of trial, Lopez and Torres were convicted of conspiracy to commit money laundering.

Lopez unsuccessfully moved for a judgment of acquittal and for a new trial. Lopez timely appealed.

II.    DISCUSSION[3]

On appeal, Lopez advances two unpreserved arguments to support his claim that his motions were denied in error: (1) that the District Court should have granted his motion for a judgment of acquittal because there was insufficient evidence that there was an agreement between Lopez and Torres and (2) that the underlying indictment was constructively amended.

A.    Motion for Judgment of Acquittal

A "defendant is entitled to judgment of acquittal if, viewing the record in the light most favorable to the government, no rational jury could have found the defendant guilty beyond a reasonable doubt." United States v. Rivera, 74 F.4th 134, 137 (3d Cir. 2023). Typically, the grant or denial "of a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 is reviewed de novo." United States v. Carbo, 572 F.3d 112, 113 (3d Cir. 2009). As Lopez did not preserve his argument,[4] however, we review for

---

[3]    The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 1291.

[4]    Before the District Court, Lopez argued that the evidence was insufficient to establish that he believed the representation that the funds used to purchase the car were criminal proceeds. He now attempts to bootstrap this into an argument that the evidence was insufficient to establish that he agreed to commit concealment money laundering. He

5

plain error. Plain error exists where there is "(1) an error; (2) which is clear or obvious; and (3) which affects substantial rights (i.e., it affected the outcome of the district court proceedings)." United States v. Navarro, 145 F.3d 580, 584-85 (3d Cir. 1998). Still, for the first prong – error – we "use[] the standard of review that would have applied had the argument been preserved," which, as noted, is a de novo determination of whether any rational trier of fact could have found Lopez guilty, viewing the record in the light most favorable to the prosecution and the jury's verdict. United States v. Adair, 38 F.4th 341, 356 (3d Cir. 2002); United States v. Mornan, 413 F.3d 372, 382-83 (3d Cir. 2005); United States v. Johnson, 302 F.3d 139, 149 (3d Cir. 2002).

To prevail at trial, the government had to prove that (1) Lopez and Torres agreed with each other to commit the criminal object of concealment money laundering; (2) that Lopez and Torres knew the unlawful purpose of their agreement; and (3) that Lopez and Torres joined together in the agreement willfully, with the intent to further its unlawful purpose. "The agreement must [have been] one that, if completed, would satisfy the elements of the underlying substantive offense." United States v. Fallon, 61 F.4th 95, 115 (3d Cir. 2023). Therefore, the government had to prove that Lopez agreed with at

does so by arguing that if the evidence was insufficient to establish that he knew the criminal nature of the proceeds, then it was insufficient to establish that he agreed to conceal the source of such proceeds. While his new challenge relies in part upon a preserved argument, he did not preserve the particular issue of whether the evidence was insufficient to establish agreement by failing to raise in it in his Rule 29 motion. See United States v. Williams, 974 F.3d 320, 362 (3d Cir. 2020) (holding that where a Rule 29 motion presents specific arguments, any such arguments not raised are deemed unpreserved on appeal).

least one other person to conduct a financial transaction involving property represented by law enforcement to be proceeds of a specified unlawful activity with the intent to conceal the nature, location, source, ownership, or control of property believed to proceeds of a specified unlawful activity. 18 U.S.C. § 1956(a)(3)(b).

We conclude that the District Court did not err in finding that the evidence was sufficient for a reasonable juror to find that Lopez did so agree. The evidence at trial established that Lopez was the owner of C&D, and Torres was employed by Lopez as a salesman. Lopez relied on Torres to handle C&D's sales and finances and trusted Torres's judgment. In conversations with Thompson, Lopez and Torres would describe how they worked in tandem. These conversations were captured on audio recordings as were conversations in which Thompson represented to Lopez that he used cash because his income was derived from trafficking cocaine. When discussing that Thompson did not want large (and hence, traceable) purchases in his name, Lopez responded by referencing a song called the "Ten Crack Commandments," which Thompson testified at trial is a song about drug dealers evading detection. Moreover, Lopez's own testimony at trial shows he was aware that Thompson would pay cash for the high-value car, that Thompson did not want his name on any paperwork, and that his identity would be concealed by executing the paperwork in Ulrickson's name. Indeed, both Torres and Lopez told Thompson that Thompson's identity could be omitted from paperwork. Furthermore, Lopez's signature was on documents for the purchase of the car that represented Ulrikson as the purchaser and as the proper title bearer, which Torres ensured were finalized as he completed them with Ulrikson's information only. The effect of the

actions of Torres and Lopez was to conceal the identity of the true purchaser and how he paid. A reasonable jury could conclude that there was an implicit agreement between Torres and Lopez to achieve that effect, so, there was no error.

Lopez's arguments that there was insufficient evidence of an agreement between him and Torres are unavailing. Lopez notes that the government did not offer direct evidence of an explicit agreement, such as a recording of Lopez and Torres discussing the sale of the car to Thompson but in Ulrikson's name. Lopez argues that the evidence only establishes that he did a "poor job" of supervising Torres in a sale "to someone who told [Lopez ] that he was a drug dealer at some point." Def.'s Opening Br. at 27. While a jury could have credited this defense, it did not. And the District Court correctly recognized that it could not disturb the jury's verdict simply because "another inference" was possible or because the "evidence proffered at trial may [have] be[en] consistent with multiple possibilities." United States v. Caraballo-Rodriguez, 726 F.3d 418, 432 (3d Cir. 2013). As explained above, the evidence presented allowed a rational juror to find that the purchase could not have been executed in a manner that prevented tracing the car to Thompson without agreement between Lopez and Torres, that they did so agree, and that the sale was completed with the intent to conceal the source of the cash which had been explicitly represented to them to be the proceeds of drug trafficking. Although Lopez correctly notes that the government did not present direct evidence of an explicit agreement, the necessary knowledge and intent for a conspiracy conviction can be "inferred from evidence of related facts and circumstances from which it appears[] as a reasonable inference[.]" United States v. Boria, 592 F.3d 476, 481 (3d Cir. 2010).

8

Therefore, the District Court did not err in denying Lopez's motion for judgment of acquittal and we will affirm Lopez's conviction.

B.    Motion for a New Trial

A defendant is entitled to a new trial when an indictment is constructively amended, United States v. McKee, 506 F.3d 225, 248 (3d Cir. 2007), because Courts "cannot … amend an indictment – either formally or constructively – to include new charges." United States v. Scarfo, 41 F.4th 136, 193 (3d Cir. 2022). An indictment can be constructively amended when "an element of the offense for which [Defendant] was convicted was different from an element of the offense for which it appears from the face of the indictment he was charged." United States v. Bryan, 483 F.2d 88, 96-97 (3d Cir. 1973).

Lopez argues that he was entitled to a new trial and raises the unpreserved argument that the indictment was constructively amended to charge him with concealment money laundering, rather than conspiracy. Because that argument was not preserved, we again review for plain error, and here too we evaluate the first prong of that standard, error, *de novo*. See United States v. Cammarata, 145 F.4th 345, 360 (3d Cir. 2025) ("Our review of a properly preserved constructive amendment claim is plenary"); Adair, 38 F.4th at 356.). Lopez relies on the following: (1) two instances in the trial where Lopez's trial counsel and the District Court erroneously referred to the charged offense as concealment money laundering rather than conspiracy to money launder; (2) counsel for Torres stating, in closing argument, that the government had to prove that Torres intended to conceal who owned the car; (3) the government in its closing

9

argument stating that it did not need to prove that Lopez and Torres *explicitly* agreed to conceal the true owner of the car; (4) and, the District Court's willful blindness instruction. Lopez argues that each of the above occurrences led the jury to believe that an agreement between him and Torres was not necessary to convict him, but rather, left the jury with the impression that he was charged with concealment money laundering.

We again perceive no plain error as the indictment was not constructively amended. In the first instance, Torres's counsel correctly stated that Torres (and hence, Lopez) had to intend to conceal the source of the alleged criminal proceeds. That is because, in order to conspire to commit concealment money laundering, Torres and Lopez had to join the conspiracy knowing its criminal object. Fallon, 61 F.4th at 115-16. This requires having the requisite mens rea to commit the criminal object. United States v. Carr, 25 F.3d 1194, 1201 (3d Cir. 1994) (noting that there must be an intent to achieve the conspiratorial goal). As to the government's closing, it is not plain to us that the inference Lopez draws from the government's remark would have been made by the jury. Moreover, the government stated repeatedly that Lopez had to agree with Torres to execute the car sale with the intent to conceal the source of the represented criminal proceeds. While the District Court did on one occasion erroneously instruct that Lopez was charged with concealment money laundering, the District Court stated the correct offense multiple times and "[j]ury instructions must be read as a whole." United States v. Flores, 454 F.3d 149, 157 (3d Cir. 2006) (citation modified). Similarly, the record is replete with instances throughout the trial where the parties and the District Court stated that Lopez was charged with conspiracy to money launder and addressed the

corresponding elements in detail. Finally, we reject the argument that the District Court's instructions misled the jury to believe that they were not required to find an agreement between Lopez and Torres to commit money laundering. The District Court only instructed that, as to the knowledge of the criminal object, the required mental state can be established when a defendant "consciously used deliberate efforts to avoid knowing about [the conspiracy] and did not actually believe that [the conspiracy] did not exist." A974. This is consistent with our precedent that "[d]eliberate ignorance cannot become a safe harbor for culpable conduct." United States v. Wert-Ruiz, 228 F.3d 250, 258 (3d Cir. 2000).

In sum, we cannot conclude that any constructive amendment occurred, much less one that affected the outcome of the trial. Navarro, 145 F.3d at 584-85. Thus, the District Court did not plainly err in denying Lopez's motion for new trial.

III. CONCLUSION

For the reasons presented above, we will affirm.